FILED ___ ENTERED
___ LODGED ___ RECEIVED

NOV 21 2023

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

The Honorable Richard A. Jones

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHANGPENG ZHAO,<br><br>Defendant. | NO. CR23-179RAJ<br><br>**PLEA AGREEMENT** |

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), the United States of America, by and through the Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section ("MLARS"); the Department of Justice, National Security Division, Counterintelligence and Export Control Section; and the United States Attorney's Office for the Western District of Washington (collectively the "Offices"), and the Defendant, CHANGPENG ZHAO (the "Defendant"), by and through his undersigned attorneys hereby submit and enter into this plea agreement (the "Agreement"). The terms and conditions of this Agreement are as follows.

Plea Agreement - 1
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1. **Waiver of Indictment.** Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge brought by the United States Attorney in an Information.

2. **The Charge.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following charge contained in the Information: Failure to maintain an effective anti-money laundering ("AML") program, as charged in Count 1, in violation of Title 31, United States Code, Sections 5318(h), 5322(b), 5322(c), and 5322(e); Title 18, United States Code, Section 2; and Title 31, Code of Federal Regulations, Section 1022.210.

By entering a plea of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the Offices in a prosecution for perjury or false statement.

3. **Elements of the Offense.** The elements of the offense of failure to maintain an effective AML program, as charged in Count 1, in violation of Title 31, United States Code, Sections 5318(h) and 5322(b), 5322(c), 5322(e); Title 18, United States Code, Section 2; and Title 31, Code of Federal Regulations, Section 1022.210 are as follows:

   a. A covered financial institution, to wit, a money services business ("MSB"), failed to develop, implement, and maintain an effective AML program;

   b. The defendant aided and abetted and caused the MSB to fail to develop, implement, and maintain an effective AML program; and

   c. The defendant acted willfully.

4. **The Penalties.** Defendant understands that the statutory penalties applicable to the offense of failure to maintain an effective AML program, as charged in Count 1, in violation of Title 31, United States Code, Sections 5318(h) and 5322(b), 5322(c), 5322(e); Title 18, United States Code, Section 2; and Title 31, Code of Federal

Plea Agreement - 2
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Regulations, Section 1022.210 are as follows: a maximum term of imprisonment of up to ten (10) years, a fine of up to $500,000 and, in addition, a fine equal to the profit gained by Defendant by reason of the offense, a period of supervision following release from prison of up to three (3) years, and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five (5) years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

The Offices and Defendant agree to recommend that the Court impose a fine in the amount of $50,000,000 in United States Currency pursuant to 31 U.S.C. § 5322(e) (the "Recommended Fine"). The Offices agree to credit the Recommended Fine against the amount the Defendant pays to the Commodity Futures Trading Commission (the "CFTC") in connection with *CFTC v. Changpeng Zhao et al*, 23 Civ. 1887 (N.D. Ill. 2023) so long as the Defendant pays the amount of the Recommended Fine to the CFTC by the date of the Defendant's sentencing. The Offices and Defendant also agree that the Recommended Fine is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a) and 3572(a).

Defendant agrees that any other monetary penalty the Court may impose, including the special assessment, costs, or restitution, is due and payable immediately and

Plea Agreement - 3
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

further agrees to submit a completed Financial Disclosure Statement as requested by the Offices.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

5. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty plea(s) may entail, even if the consequence is Defendant's mandatory removal from the United States.

6. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty;

    b. The right to a speedy and public trial before a jury of Defendant's peers;

    c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

    d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e. The right to confront and cross-examine witnesses against Defendant at trial;

Plea Agreement - 4
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

  f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

  g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

  h. The right to appeal a finding of guilt or any pretrial rulings.

 7. **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

  a. The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

  b. After consideration of the Sentencing Guidelines and the factors in Title 18, United States Code, Section 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

  c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

Plea Agreement - 5
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Agreement; and

       d.     Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

    8.     **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose. The Offices reserve the right to argue for an above-Guidelines sentence, and Defendant reserves the right to argue for a below-Guidelines sentence.

    9.     **Statement of Facts.** Defendant is pleading guilty because he is guilty of the charge contained in the Information. Defendant admits, agrees, and stipulates that the factual allegations set forth in the Information and the Statement of Facts are true and correct, and that the Information and Statement of Facts accurately reflect Defendant's criminal conduct. Defendant stipulates to the admissibility of the Statement of Facts in any proceeding by the Offices, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Statement of Facts at any such proceeding. Defendant admits Defendant is guilty of the charged offense. The parties agree on the following facts:

       a.     *Overview*: Starting at least as early as August 2017 and continuing to at least October 2022, Defendant Changpeng Zhao violated the Bank Secrecy Act ("BSA") by willfully causing Binance Holdings Limited ("Binance" or "the Company") to fail to implement and maintain an effective AML program. Defendant prioritized Binance's growth, market share, and profits over compliance with the BSA. Binance facilitated billions of dollars of cryptocurrency transactions on behalf of its customers without implementing appropriate "know your customer" ("KYC") procedures or conducting adequate transaction monitoring. As a result of Defendant's willful failure to implement an effective AML program, Binance processed transactions involving

Plea Agreement - 6
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

proceeds of illegal activity and caused transactions between U.S. persons and persons in jurisdictions that are subject to comprehensive U.S. sanctions.

b. **The Bank Secrecy Act**: Binance was a foreign-located MSB that did business in the United States, including by providing services to a substantial number of U.S. customers. As an MSB, Binance was required to register with the Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") and to implement and maintain an effective AML program pursuant to the BSA, 31 U.S.C. §5311 *et seq*. An effective AML program is one that is reasonably designed to prevent the MSB from being used to facilitate money laundering and the financing of terrorist activities and includes, among other things, policies, procedures, and internal controls for customer identification (*i.e.*, KYC), transaction monitoring, and identifying and reporting suspicious transactions.

c. Under U.S. laws, U.S. persons are prohibited from conducting transactions with entities and persons subject to U.S. sanctions, including persons who are present in jurisdictions subject to comprehensive U.S. sanctions. Comprehensive U.S. sanctions prohibit U.S. persons broadly from conducting commercial activity with persons in certain specified regions, for example, Iran. An effective AML program would, among other things, have measures in place, such as KYC and transaction monitoring, that could prevent transactions between U.S. persons and persons in jurisdictions that are subject to comprehensive U.S. sanctions. Many MSBs, particularly those doing business wholly or in substantial part in the United States, have sanctions compliance programs to ensure that they do not violate or cause a violation of U.S. sanctions.

d. **Binance**: Defendant founded Binance in June 2017 and, as its chief executive officer, exercised day-to-day control over its operations. Binance.com was an online exchange through which millions of customers around the world bought and sold hundreds of virtual assets. Binance had U.S. customers and tracked the exchange's

Plea Agreement - 7
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

progress in securing new customers from various geographies, including the United States. Between June 2017 and into 2022, more than a million U.S. retail users conducted more than 20 million deposit and withdrawal transactions worth $65 billion. These users conducted more than 900 million spot trades worth more than $550 billion. Over this same period, Binance relied on U.S. trading firms to make markets on the exchange and provide needed liquidity, thereby making various digital assets available to trade by other customers at competitive prices. This helped Binance grow into the largest cryptocurrency exchange in the world.

   e. Defendant understood that because Binance served a substantial number of U.S. users, it was required to register with FinCEN as an MSB and therefore required under the BSA to implement an effective AML program. Nonetheless, Binance did not register with FinCEN as an MSB at any time or implement an effective AML program in the relevant period.

   f. Defendant prioritized Binance's growth and profits over compliance with U.S. law, telling Binance employees that it was "better to ask for forgiveness than permission" in what he described as a "grey zone." Defendant knew that U.S. users were essential for Binance to grow, were a significant source of revenue, and had a substantial network effect. As more customers conducted transactions on Binance, the exchange became increasingly attractive to other customers, generating additional revenue for Binance. Defendant sought those benefits for the Company while disregarding the legal obligation to implement an effective AML program.

   g. ***Defendant willfully violated the BSA by causing Binance to have an ineffective AML program***: During the relevant period, Defendant willfully violated the BSA by causing Binance to fail to implement and maintain an effective AML program. In particular, Binance failed to collect or verify KYC information from a large share of its users, including users in the Western District of Washington; failed to

Plea Agreement - 8
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

systematically monitor transactions; and failed to file suspicious activity reports ("SAR") with FinCEN as required by the BSA.

        h.     Defendant believed that requiring all customers to provide KYC information would mean that some customers would choose not to use Binance and others would be rejected by the compliance process—both of which would interfere with Binance gaining market share. As a result, before August 2021, Binance allowed a significant portion of its customers to create accounts and trade on the exchange without providing identifying information.

        i.     For example, from Binance's inception in 2017 until about August 2021, a Binance user could open an account known as a "Level 1" or "Tier 1" account by simply providing an email address and password; Binance required no other information, such as the user's name, citizenship, residential address, or government identification.

        ii.     Once the Level 1 account was active, the user could deposit and trade an unlimited amount of virtual currency. Although a Level 1 account user could withdraw value up to only 2 Bitcoin ("BTC") per day, a user could evade the withdrawal limit by opening multiple Level 1 accounts using different email addresses. And for most of Binance's existence, even if a user adhered to the withdrawal limit on a single account, the user could still withdraw thousands—and sometimes tens of thousands—of dollars in total value of cryptocurrency per day.

        iii.     For example, on December 15, 2018, at about its lowest value during Binance's existence, 2 BTC were worth $6,279.70. On April 15, 2021, at around Bitcoin's highest value during the period that Binance offered Level 1 accounts, 2 BTC were worth about $127,411.60.

        iv.     On certain occasions, Binance identified users who appeared to be involved in illicit activity but allowed the users to continue to use the exchange

Plea Agreement - 9
United States v. Zhao, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

because they were "VIPs," advising them to avoid transferring funds from sources that Binance identified as high risk.

  v.  In 2019, Binance amended its Terms of Use to prohibit users from opening multiple active accounts. However, for any accounts opened before August 2021, Binance did not have effective KYC controls in place to enforce the Terms of Use.

  i.  Binance's AML program did not systematically monitor transactions, as required by the BSA and its implementing regulations. And while Binance developed an internal process for flagging suspicious activity, Binance never filed a SAR with FinCEN.

  j.  Because Binance during the relevant period did not require all users to complete KYC and did not have procedures to systematically monitor transactions and report suspicious activity, Binance lacked effective controls to prevent it from processing transactions involving proceeds of illicit activity on behalf of its customers.

  k.  Defendant understood that U.S. law prohibits U.S. persons from conducting certain financial transactions with countries, persons, or entities sanctioned by the U.S. government. Defendant knew that both U.S. users and users in comprehensively sanctioned jurisdictions were on the Binance exchange. Binance employees, including Binance's chief compliance officer, specifically warned Defendant that there were users from sanctioned countries on Binance's exchange and about the U.S. legal risks associated with transactions involving such customers, with the chief compliance officer once describing it to Defendant as the chief compliance officer's "duty to constantly remind" Defendant and others of this risk. On another occasion, in a chat thread that included Defendant, a Binance employee informed senior Binance officials that the chief financial officer of another company had been arrested for sanctions violations and warned that this could happen to Binance.

  l.  Defendant knew a BSA-compliant, effective AML program, with appropriate KYC and transaction monitoring procedures, was important to detect,

Plea Agreement - 10
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prevent, and report criminal activity at financial institutions and that effective AML compliance programs with appropriate KYC procedures could make it possible to block transactions between U.S. users and users from comprehensively sanctioned jurisdictions, as well as individuals and entities that are sanctioned under programs that are not country-specific, *i.e.*, specially designated nationals ("SDNs"). For example, Binance's chief compliance officer told Defendant and other senior Binance employees that it was imperative to block trades by users who were logged in using an internet protocol ("IP") address associated with a comprehensively sanctioned jurisdiction, even if those users had provided KYC documents from a non-sanctioned country. He noted that both "IP + KYC" are factors for sanctions. Later in the chat, the chief compliance officer noted that "Iran, North Korea, Syria, Cuba and Crimea . . . . ***They present the highest risk in [the Department of Treasury's Office of Foreign Assets Control ("OFAC")]***."

    m. Defendant nonetheless did not direct Binance to implement controls, including appropriate KYC, that would have prevented Binance from matching U.S. users with users subject to U.S. sanctions to conduct cryptocurrency transactions. As a result, Binance would continue to allow a customer to trade on the exchange using an IP address from a comprehensively sanctioned jurisdiction if that user had submitted KYC documents from a non-sanctioned jurisdiction. It was reasonably foreseeable to Defendant and others that Binance's matching engine—the tool that matched customer bids and offers to execute cryptocurrency trades—would match U.S. users with counterparties in comprehensively sanctioned jurisdictions. Indeed, without an effective AML program and controls, Binance caused transactions between these U.S. users and users in comprehensively sanctioned jurisdictions. These transactions were a clear and foreseeable result of Defendant's decision to prioritize profit and growth over compliance with the BSA.

    n. Under Defendant's direction, Binance permitted any customer to use its exchange without completing KYC until August 2021. In August 2021, Binance

Plea Agreement - 11
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

publicly announced it would require all users to undergo full KYC. Even after that announcement, however, the Company allowed a considerable share of Binance's users to use Binance without KYC until May 2022. Moreover, until at least October 2022, Binance allowed users to trade on the exchange through third-party "brokers" without submitting any KYC information to Binance.

  o. Between August 2017 and October 2022, Binance caused, according to its own data, at least $890 million in transactions between U.S. users and users Binance identified as Iranians; and millions more in transactions between U.S. users and users in other comprehensively sanctioned jurisdictions, including Cuba, Syria, and the Ukrainian regions of Crimea, Donetsk, and Luhansk.

  p. ***Binance profited significantly from its violations of law***: Defendant and Binance prioritized Binance's growth over compliance with the BSA. As a result, Binance earned significant fees from U.S. customers without implementing an effective risk-based AML program that would protect customers, the U.S. financial system, and Binance from transactions involving illicit funds. In particular, Binance earned significant fees on transactions between U.S. customers and customers in comprehensively sanctioned jurisdictions.

  The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the Offices or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

  10. **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

  a. A base offense level of 8, pursuant to USSG § 2S1.3(a)(1);

Plea Agreement - 12
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

        b.     A two-level increase for a conviction of an offense under Chapter 53 of Title 31, United States Code, and involving more than $100,000 in a twelve-month period, pursuant to USSG § 2S1.3(b)(2); and

        c.     A four-level increase to the base offense level for aggravating role pursuant to USSG § 3B1.1(a).

The parties agree they are free to present arguments regarding the applicability of a two-level increase for proceeds of unlawful activity pursuant to USSG § 2S1.3(b)(1). The parties further agree that they will seek no other adjustments in determining Defendant's Sentencing Guidelines range. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

11.    **Acceptance of Responsibility.** At sentencing, if the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the Offices will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the Offices by timely notifying the Offices of Defendant's intention to plead guilty, thereby permitting the Offices to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

12.    **Fine.** The parties agree to recommend to the Court that an appropriate fine pursuant to 31 U.S.C. § 5322(e)(1) is $50 million. The government agrees that it will deem this fine satisfied by payment to the Commodity Futures Trading Commission of $50 million, provided such payment is made by the time of sentencing.

13.    **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the Offices agree not to bring further criminal charges against Defendant relating to the conduct described in the Statement of Facts or the Information filed pursuant to this

Plea Agreement - 13
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agreement or relating to the conduct described in the Statement of Facts or the Information filed on the same day pursuant to the plea agreement in United States v. Binance. In this regard, Defendant recognizes the Offices have agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the Offices will provide the United States Probation Office with evidence of all conduct committed by Defendant. This Agreement does not provide any protection against, and the Offices may also use any information related to the conduct described in the Statement of Facts against Defendant in, any prosecution or other proceeding relating to (a) obstruction of justice; (b) perjury or making a false statement; (c) any crime of violence; (d) a violation of any provision set forth in Chapter 113B of Title 18 of the United States Code; or (e) a violation of any provision of Title 26 of the United States Code.

14. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Agreement: (a) the Offices may withdraw from this Agreement and Defendant may be prosecuted for all offenses for which the Offices have evidence; (b) Defendant will not oppose any steps taken by the Offices to nullify this Agreement, including the filing of a motion to withdraw from the Agreement; and (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the Offices are free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into

Plea Agreement - 14
United States v. Zhao, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the Offices are free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Agreement.

Defendant also agrees that, effective as of the date Defendant signs this Agreement, and notwithstanding any other subsequent event, including but not limited to Defendant's failure to plead guilty, the Court's refusal to accept Defendant's guilty plea, or Defendant's withdrawal (or attempted withdrawal) of his guilty plea, the Statement of Facts set forth in this Agreement shall be admissible against Defendant in any criminal case involving the Offices and Defendant as: (a) substantive evidence offered by the Offices in their case-in-chief and rebuttal case; (b) impeachment evidence offered by the Offices on cross-examination; and (c) evidence at any sentencing hearing or other hearing. In addition, Defendant also agrees not to assert any claim under the Federal Rules of Evidence (including Rule 410), the Federal Rules of Criminal Procedure (including Rule 11), or the United States Sentencing Guidelines (including USSG § 1B1.1(a)) that the Statement of Facts set forth in this Agreement should be suppressed or is otherwise inadmissible as evidence (in any form).

15. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea required by this Agreement, Defendant waives all rights to appeal from Defendant's conviction as well as any pretrial rulings of the Court and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that does not exceed eighteen (18) months, Defendant waives to the full extent of the law:

a. Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine,

Plea Agreement - 15
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

        b.      Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to Title 28, United States Code, Section 2241 to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the Offices may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

16.     **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Agreement or set forth on the record at the change of plea hearing in this matter.

17.     **Statute of Limitations.** In the event that this Agreement is not accepted by the Court for any reason, or if Defendant breaches any of the terms of this Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Agreement to: (1) three (3) months following the date of non-acceptance of the Agreement by the Court; or (2) three (3) months following the date on which a breach of the Agreement by Defendant is discovered by the Offices.

18.     **Public Statements by Defendant.** Defendant expressly agrees that he shall not—either directly or through present or future attorneys, agents, or any other person authorized to speak for Defendant—make any public statement, in litigation or otherwise,

Plea Agreement - 16
United States v. Zhao, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

contradicting the acceptance of responsibility by Defendant set forth above, the facts described in the Information and Statement of Facts, or the facts described in the Statement of Facts in *United States v. Binance Holdings Limited*.

19. **Completeness of Agreement.** The Offices and Defendant acknowledge that these terms constitute the entire Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter or as may be presented to the Court. This Agreement binds only the Criminal Division, U.S. Department of Justice; National Security Division, U.S. Department of Justice; and U.S. Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office, any other office or agency of the United States, or any state or local prosecutor.

Dated this 21st day of November, 2023.

_____
CHANGPENG ZHAO
Defendant

_____
BENJAMIN A. NAFTALIS
Attorney for Defendant

_____
WILLIAM A. BURCK
Attorney for Defendant

Plea Agreement - 17
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**FOR THE DEPARTMENT OF JUSTICE:**

MARGARET A. MOESER
Acting Chief
Money Laundering and Asset Recovery
Section, Criminal Division
U.S. Department of Justice

*/s/ Kevin G. Mosley*

Kevin G. Mosley
Elizabeth R. Carr
Trial Attorneys

JENNIFER KENNEDY GELLIE
Acting Chief
Counterintelligence and Export Control
Section, National Security Division
U.S. Department of Justice

*/s/ Beau D. Barnes*

Beau D. Barnes
Alex Wharton
Trial Attorneys

TESSA M. GORMAN
Acting United States Attorney
Western District of Washington
U.S. Department of Justice

*/s/ Andrew Friedman*

Andrew Friedman
Assistant United States Attorney

Plea Agreement - 18
*United States v. Zhao*, CR23-179RA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970