1        UNITED STATES DISTRICT COURT

2     WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3  _____

4                            )
   UNITED STATES OF AMERICA,   ) CR23-179-RAJ
5                            )
                  Plaintiff,   ) SEATTLE, WASHINGTON
6                            )
   v.                         ) April 30, 2024
7                            )
   CHANGPENG ZHAO,            ) 9:30 a.m.
8                            )
                  Defendant.   ) Sentencing Hearing
9  _____

10 _____

11          VERBATIM REPORT OF PROCEEDINGS
         BEFORE THE HONORABLE RICHARD A. JONES
12            UNITED STATES DISTRICT JUDGE
   _____

13

14  APPEARANCES:

15

16   For the Plaintiff:     Kevin Mosley
                            Elizabeth Carr
17                          US Department of Justice
                            1400 New York Avenue NW
18                          Washington, DC 20530

19                          Ian Richardson
                            US Department of Justice
20                          950 Pennsylvania Avenue NW
                            Suite 7700-D
21                          Washington, DC 20530

22                          Michael Dion
                            Jonas Lerman
23                          US Attorney's Office
                            700 Stewart Street
24                          Suite 5200
                            Seattle, WA 98101

25

```
 1    For the Defendant:      William Burck
                              Quinn Emanuel Urquhart & Sullivan
 2                            1300 I Street NW
                              Suite 900
 3                            Washington, DC 20005

 4                            Mark Bartlett
                              Davis Wright Tremain
 5                            920 Fifth Avenue
                              Suite 3300
 6                            Seattle, WA 98104

 7                            Benjamin Naftalis
                              Latham & Watkins
 8                            1271 Avenue of the Americas
                              New York, NY 10020

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1          THE CLERK:  We are here for sentencing in the matter

 2    of the United States versus Changpeng Zhao, Cause No. 23-179,

 3    assigned to this court.

 4       If counsel and probation officers could please rise and

 5    make your appearances for the record.

 6          MR. MOSLEY:  Kevin Mosley, for the United States,

 7    Your Honor.  With me at counsel table are Assistant U.S.

 8    Attorneys Michael Dion and Jonas Lerman.  And also trial

 9    attorney Elizabeth Carr of the Money Laundering and Asset

10    Recovery Section, and Ian Richardson of the Justice

11    Department's National Security Division.

12          THE COURT:  Good morning.  Who will be speaking on

13    behalf of the government?

14          MR. MOSLEY:  I will, Your Honor.

15          THE COURT:  Thank you.  Please be seated.

16       Counsel.

17          MR. BARTLETT:  Good morning, Your Honor, Mark

18    Bartlett on behalf of Mr. Zhao, who's beside me in court.

19          MR. BURCK:  Good morning, Your Honor, William Burck

20    for Mr. Zhao.

21          MR. NAFTALIS:  Good morning, Your Honor, Benjamin

22    Naftalis for Mr. Zhao.

23          PROBATION OFFICER WHALEY:  Good morning, Your Honor,

24    Amelia Whaley, on behalf of U.S. Probation.

25          PROBATION OFFICER ASBURY-BACA:  And Officer

 1  Asbury-Baca on behalf of probation.

 2        THE COURT:  Good morning, all of you.  Please be

 3  seated.

 4     Who will be speaking on behalf of the defense?

 5        MR. BARTLETT:  With the court's permission, I was

 6  going to do a short introduction.  Mr. Burck will handle most

 7  of the argument.  There's a legal issue, if it comes up,

 8  Mr. Naftalis will handle that.  I should also mention that

 9  Mr. Zhao also wants to make a statement to the court.

10        THE COURT:  That will be acceptable, counsel.

11     I will confirm, counsel, that I've reviewed and considered

12  the following documents:

13     First, the presentence report prepared by United States

14  Probation Officers Amelia Whaley and Sarah Asbury-Baca, and

15  attachments.  The government's sentencing memorandum.  The

16  defendant's sentencing memorandum with exhibits, and over 160

17  letters of support for the defendant.

18     I've also reviewed the defendant's entire sentencing

19  submission, and the plea agreement.  The court will also

20  verify that the court has reviewed all docketed items.  The

21  court had confirmed at 5:00 p.m. yesterday, just to verify,

22  that the court had reviewed all docketed items.  And I will

23  represent the same thing to all parties.

24     The court notes that there will be an opportunity to make

25  recommendations to this court, but before we do that, the

1  court wishes to engage in whether or not there are any

2  outstanding objections.

3      From the presentence report, I understand there's an

4  outstanding objection as it relates to the application of

5  Guideline Section 2S1.3(b)(1).

6      Counsel for the government, is that still correct?

7          MR. MOSLEY:  Yes, Your Honor, that is correct.

8          THE COURT:  Counsel for the defense, is that still

9  correct?

10         MR. BARTLETT:  Yes, Your Honor.

11         THE COURT:  Counsel, before you begin your argument

12 to the court, perhaps it might be advisable for the court to

13 give you its preliminary determination of this issue, and

14 then I'll give you the opportunity to supplement that with

15 argument that you wish to present to the court.

16     First, it's the court's understanding that there's a

17 request for a two-level enhancement under Guideline Section

18 2S1.3(b)(1), whether to impose the enhancement, because the

19 government asserts the defendant knew or believed, at least

20 some of the funds his company processed, were of unlawful

21 activity.

22     The court will note the following:  First of all, the

23 government references conscious avoidance.  That is a

24 methodology utilized by the Second Circuit, under the

25 *Finkelstein* case.  That does not appear to be a test that's

1    been adopted by the Ninth Circuit.  It's not the law in the

2    Ninth Circuit.

3         Second, the government represents reasonably foreseeable

4    should be applied.  That does not appear to be the standard;

5    rather, deliberate knowledge and a belief appears to be the

6    applicable standard.

7         The record before the court is that the defendant company

8    knew they didn't have effective anti-money-laundering

9    controls in place.  However, the plea agreement indicates

10   that Binance processed transactions involving proceeds of

11   illegal activity.

12        The record also indicates, and again, referencing the plea

13   agreement, that Binance caused transactions between the

14   United States persons and persons in jurisdictions that are

15   subject to comprehensive U.S. sanctions.

16        In looking at the entire record submitted by the parties,

17   first of all, there's no evidence that the defendant

18   explicitly was informed of any specific transaction, or a

19   specific user transacted on Binance with criminal proceeds.

20   In reviewing the record, the court also notes that there's no

21   evidence that the defendant was aware of suspicious

22   circumstances, making it reasonable to believe such funds

23   were processed, or proceeds of unlawful activities.

24        The court also considered the defendant was aware of gaps

25   or weaknesses in the company's compliance controls, and

1    existence of users from sanctioned countries, but Binance

2    exchanges still occurred.

3        The court agrees with the defense argument that their

4    issue of generalized knowledge is insufficient.  The court

5    believes that it's inappropriate to make application of that

6    request by the government.  And the court will not agree and

7    buy into the government's recommendation that that be

8    adopted.  For those reasons, the court will deny the request

9    for that application.

10       Counsel for the government, I'll give you a chance to make

11   additional argument, if you wish to, at this time.

12           MR. MOSLEY:  One moment, Your Honor.  I'm just

13   scaling down, based on what the court just --

14           THE COURT:  You can make your record, counsel.  And

15   counsel, if it will help you tailor your remarks, I will

16   indicate, first of all, that both sides present reasonable

17   justifications and bases for the arguments that you advanced

18   to this court in your briefing.  But both sides failed to

19   articulate a clear standard to be applied by this court.  And

20   the court reaffirms that the government carries the burden of

21   proof.  But the government has offered nothing more than mere

22   inferences to support their argument, without specific

23   evidence to support the same.  And that's the reason for the

24   interpretation made by this court.

25       So, counsel, feel free to consult with co-counsel and then

1   make your argument to the court.

2          MR. MOSLEY:  I'm ready, Your Honor.

3          THE COURT:  Please proceed, counsel.

4          MR. MOSLEY:  Sorry, I don't want to repeat a lot of

5   the factual arguments that we made.  I think Your Honor

6   adequately covered those from the bench.  But I do want to

7   say a couple of things about what we think the legal standard

8   is here.

9          In Mr. Zhao's papers, they indicate that there should be a

10  heightened mens rea standard, to apply to the application of

11  the enhancement, and they refer to the court in *Rombakh*, they

12  refer to it as the deliberate knowledge enhancement.  And

13  then there's some gloss that they add to that enhancement

14  about showing that -- or arguing that it requires knowledge

15  of specific transactions.  And we don't believe that that is

16  necessarily the right way to look at that.

17         You know, the court in *Rombakh* never really addressed what

18  deliberate knowledge meant, in relevant part, because the

19  parties had already agreed that the enhancement didn't apply.

20  And to the extent that the court did address that

21  enhancement, it just repeated what the enhancement said,

22  which is that it can be applied if the defendant knew or

23  believed that the funds were proceeds of unlawful activity.

24         Referencing the *Singh* case, I'm not -- that's not

25  particularly enlightening either.  You know, in the

1   submission, the defense analogizes the mens rea standard

2   under 2S1.1(b)(1) to 2S1.3(b)(1).  I think those enhancements

3   are not quite the same.  They are similar, but they are not

4   quite the same.  The six-level enhancement applied in

5   money-laundering cases is warranted when the defendant knew

6   or believed the laundered funds were proceeds of and were

7   intended to promote, among other things, an offense involving

8   the manufacture, importation, or distribution of a controlled

9   substance or a listed chemical.

10      Given the requirement that the 2S1.1 enhancement requires

11  knowledge of a particular offense, I think trying to

12  transport that requirement into this requirement is

13  inappropriate, as there is no such requirement in the 2S1.3

14  enhancement.

15      And that court never addressed the threshold mens rea for

16  applying the enhancement.  All it said was that the evidence

17  elicited at trial was overwhelming, that the defendant knew

18  the laundered funds were drug proceeds.

19      So while knowledge of specific laundered funds as proceeds

20  of a specific offense was sufficient to apply the enhancement

21  under 2S1.1, that's not the same as finding such proof is

22  necessary for the enhancement to apply, in 2S1.3.

23      The third case relative to the Ninth Circuit, is *Walker*,

24  and that's closer to this case.  It addresses the 2S1.3

25  enhancement applied to the case, involving a defendant who

1   caused financial institutions to fail to file CTRs.

2       In that case, the defendant argued that there was no

3   evidence he had knowledge of the underlying criminal

4   activity.  But the court applied the enhancement, over that

5   objection, inferring that the defendant did know of the

6   unlawful activity, based on the attempt to conceal the source

7   of funds, and co-conspirator testimony that the defendant had

8   been at the office of the company, and that according to the

9   witness, the defendant knew about the company's illegal

10  activities.

11      Given that inference is in -- at least in that case -- a

12  function or part of how the court came to the conclusion that

13  the 2S1.3 enhancement applied, we argue that supports a

14  similar finding here by this court.

15      I'm not going to go back over the facts, the court has

16  addressed those completely from the bench.  But as far as --

17  but we wanted to make a record, at least on the legal

18  analysis, as it relates to the mens rea standard here.

19      One more thing I would add is that our burden of proof is

20  just preponderance of the evidence.  And typically, we don't

21  require -- smoking-gun evidence isn't necessarily required

22  under a preponderance standard.  And with that, I will sit

23  down.

24          THE COURT:  And, counsel, there was one additional

25  objection that was raised with the presentence report.  And

1    that specific objection is a request to add to paragraph 29,

2    "Under Zhao's direction, collaborated with law enforcement."

3    Do you take a position on that, counsel?  That's the second

4    objection.  Actually, it's the first objection by the

5    defense.

6           MR. MOSLEY:  Thank you, Your Honor.  As to that

7    objection, we agree with probation, that we don't have

8    sufficient information to verify that objection, or verify

9    the veracity of that objection.  We do know that Binance has

10   collaborated and cooperated with law enforcement in certain

11   cases.  I don't know specifically, standing here right now,

12   that we can verify that particular one.

13          THE COURT:  Counsel, before you sit down, the other

14   question I have is, other than that particular objection,

15   were there any other objections that you had to the probation

16   department guideline calculations?

17          MR. MOSLEY:  No, Your Honor.

18          THE COURT:  That includes the two-level specific

19   offense characteristic enhancement, correct?

20          MR. MOSLEY:  Yep, that's correct, Your Honor.

21          THE COURT:  All right.

22      Now, with that, counsel, the court's addressed all of the

23   outstanding objections that were raised in the presentence

24   report that would require resolution by this court.  Would

25   you agree with that?

 1          MR. MOSLEY:  I would, Your Honor.

 2          THE COURT:  Counsel for the defense?

 3          MR. BARTLETT:  We agree also, Your Honor.

 4          THE COURT:  There are no other objections that

 5   require resolution by the court?

 6          MR. BARTLETT:  Correct.

 7          THE COURT:  Do you wish to make a further record,

 8   counsel, regarding the objection that was made and the

 9   court's ruling on the objection?

10          MR. NAFTALIS:  Thank you, Your Honor.

11          THE COURT:  Counsel, while you are there, I trust you

12   will also be addressing the other objections I raised with

13   counsel, that was raised by the defense.

14          MR. NAFTALIS:  Yes, Your Honor.  Why don't I begin

15   with that one.  So that's as to paragraph 29.

16          THE COURT:  That's correct.  Actually, paragraph 30,

17   counsel.

18          MR. NAFTALIS:  Paragraph 30.

19          THE COURT:  Okay.  You would like that added?

20          MR. NAFTALIS:  We would like it added.  We don't have

21   anything else for the court to consider on it.  To the extent

22   the court disagrees with adding it, we're not going to stand

23   on it.

24          THE COURT:  All right.  The court overrules that

25   objection.  The presentence report will remain the same as

1    presented to this court.

2        Now, make your record, counsel, on the balance of the

3    issues.

4            MR. NAFTALIS:  As to 2S1.3, we agree with Your

5    Honor's recitation of the lack of factual support or legal

6    support here and probation's thoughtful analysis here.  I

7    would only add that given that there's little to no law here,

8    I think the tie goes to the runner.  There are no facts of

9    explicit knowledge here, whether you adopt the government's

10   view of how knowledge should be read, as to specific funds or

11   specific transactions, or a lesser view of it.

12       But regardless, since there is no law here, the tie should

13   go to the runner, and the court should not include the

14   enhancement.

15           Thank you, Your Honor.

16           THE COURT:  All right.  You may be seated.

17       Again, both sides presented credible arguments to support

18   their positions.  But the bottom line, the case authority is

19   not clear, there's no clear statement in the Ninth Circuit

20   that supports either of the positions.  But the court did

21   make its record, based upon what was available and what was

22   presented.

23       I'd also like to commend probation for the excellent work

24   that you did in the presentence report.  It was probably one

25   of the most comprehensive presentence report assessments and

1    analysis this court has considered.  And I've been on this

2    bench for many years.  So my compliments to you.  And I

3    suspect the parties, whether they disagree with your position

4    or not, it was an exhaustive analysis, and that's deeply

5    appreciated.  It's not to criticize the parties, but I just

6    want to make sure that there was excellent work done by

7    probation in this case.

8        With that, I'll announce my conclusions as to the

9    appropriate offense level and criminal history category.  For

10   these calculations, I'm using the 2023 guidelines manual.

11       The court begins first by identifying that the defendant

12   pled guilty to failure to maintain an effective

13   anti-money-laundering program.  The guideline for 31 U.S.C.

14   Section 5318(h) offenses is found in guidelines

15   Section 2S1.3.  That section provides that an offense

16   involving failure to maintain an effective

17   anti-money-laundering program, has a base offense level of 8.

18   And the court so finds.

19       The court next addresses the specific offense

20   characteristics.  And the court believes that a two-level

21   increase is appropriate, as suggested by probation as well,

22   as the defendant pled guilty to an offense under Subchapter 2

23   of chapter -- strike that, 53 of Title 21, United States

24   Code, for an offense involving more than $100,000 in a

25   12-month period.  That justifies a two-level increase.

1          There are no adjustments for victims.  There's an

2     adjustment for defendant's role in the offense.  The court

3     finds the defendant was an organizer or leader of a criminal

4     activity that involved five or more participants, or was

5     otherwise extensive.  Therefore, the four-level increase is

6     appropriate.  And that's pursuant to Guideline

7     Section 3B1.1(a).

8          There's no adjustment for obstruction of justice.  The

9     adjusted offense level subtotal is, therefore, 14.  There are

10    no Chapter 4 enhancements.  The court finds the defendant has

11    clearly demonstrated acceptance of responsibility, and the

12    offense level is therefore decreased by two levels, pursuant

13    to Guideline Section 3E1.1(a).  The total offense level is

14    therefore 12.

15         Defendant has a criminal history category of 1.  The

16    imprisonment range is 10 to 16 months.  Supervised release

17    range is one to three years.  Ineligible for probation.  And

18    the fine range is $5,500 to $55,000.

19         The court will also confirm that the court did not

20    consider the *Jason* factors in its analysis.  And the court

21    makes its determination based upon the record and the

22    findings that I will articulate, to support consideration of

23    the guidelines and application of the appropriate sanctions

24    in this case, as recommended by the parties.

25         The court will proceed in the following fashion:  First,

1    I'll hear from counsel for the government; then I'll hear

2    from probation; then I'll hear from defense counsel.  The

3    defendant will be the last person to address the court.

4        The court is not aware that any other persons need to

5    speak to the court.  The court has granted counsel for the

6    defense the permission to separate or segregate your

7    arguments, and that's permissible with the court.

8        So I first wish to confirm with the government, only one

9    individual will be speaking on behalf of the government, and

10   no other supporting statements to the court; is that correct?

11           MR. MOSLEY:  That's correct, Your Honor.

12           THE COURT:  All right.

13       You may proceed, counsel.

14           MR. MOSLEY:  Good morning, again, Your Honor.  The

15   court is aware of the relevant facts, they've been described

16   in the statements of fact associated with this case, and the

17   related Binance Holdings Limited matter, and have been argued

18   extensively in both parties' sentencing submissions.  I will

19   try not to dwell too much on them now, except to make a few

20   points.

21       I'd like to touch on some themes that drove our sentencing

22   recommendation, and points -- and themes that we believe are

23   relevant to the court's decision today.  And then I'd like to

24   take a small moment of time to address some of the salient

25   points presented in Mr. Zhao's sentencing memorandum.

1          We open our submission with the chat between Mr. Zhao and

2     his colleagues, because it encapsulates one of the main

3     factors behind our sentencing recommendation, which is that

4     this was a plan.  While admitting that his choices brought us

5     all here today, Mr. Zhao cloaks that admission in language

6     suggesting a mistake.  He says, in hindsight, he should have

7     done a better job implementing a compliance program and

8     off-boarding U.S. users.

9          And in mitigation, he points to what he calls an

10    "uncertain regulatory environment."  In addition, he asserts

11    that he failed to appreciate the magnitude of having U.S.

12    users on the platform.  I think that allays what happened

13    here.  This wasn't a mistake.  It wasn't a regulatory "oops."

14    And when Mr. Zhao violated the BSA, he was well aware of the

15    legal requirements associated with availing himself of the

16    U.S. financial system.

17         Breaking U.S. law was not incidental to his plan to make

18    as much money as possible; violating the law was integral to

19    that endeavor.  And we're not guessing at this.  Mr. Zhao

20    said it himself, "Ask for forgiveness, not permission."  By

21    not asking for permission, Mr. Zhao made his company great.

22    He made himself a billionaire and a crypto celebrity.  And

23    the U.S. financial system, numerous crime victims, and U.S.

24    National Security interests, paid for it.

25         Mr. Zhao was well aware of his U.S. users and the

1    magnitude of their impact on his bottom line.  Mr. Zhao

2    tracked Binance's U.S. user base from the very beginning.  He

3    tracked how much money he made from his U.S. users, and

4    particularly from the U.S. VIPs.  And he tried to do it

5    without getting caught, which was one reason he was

6    deliberately vague about where Binance was based.

7        And in 2019, when he thought he might get caught, he

8    started Binance U.S., and he did begin to off-board some U.S.

9    users.  But even that was part of the plan.  Instead of

10   coming into compliance with U.S. law, he doubled down and

11   schemed to keep the valuable U.S. VIPs trading on Binance,

12   without U.S. authorities finding out.

13       Again, Mr. Zhao's words are instructive.  He did this to

14   achieve a reduction in his losses, and at the same time, to

15   be able to have U.S. supervision agencies not cause him any

16   troubles.

17       He knew when he did it that having U.S. users slowly turn

18   into other users, was wrong, but he did it anyway and tried

19   to hide it.

20       He only began to earnestly bring Binance into compliance,

21   after the government became aware of this investigation and

22   he knew he was caught.  And now, after he got caught and

23   admitted his crimes, Mr. Zhao comes before the court asking

24   for, if not forgiveness, per se, certainly for leniency.  And

25   while he deserves credit for coming clean and for taking

1   responsibility, that credit is reflected in his plea

2   agreement, notably in the downward adjustment for acceptance

3   of responsibility, and the government's agreement not to

4   bring further criminal charges against him related to conduct

5   described in the statements of fact or information in this

6   case, and in the related Binance case.

7        In part, to keep this plan from succeeding, we ask the

8   court to impose a sentence of 36 months' incarceration.  And

9   even if the court is not inclined to oppose that sentence,

10  the brazen nature of this conduct does require a sentence

11  that includes a meaningful period of incarceration.

12       Which brings me to my next theme, which is that a

13  meaningful sentence of incarceration is necessary, to reflect

14  the seriousness of the offense, and provide just punishment

15  for the offense, and promote respect for the law.

16       Mr. Zhao argues the most common outcome for a defendant

17  convicted of a BSA, or similar violation, is time served, or

18  probation.  As somebody who's been around long enough to have

19  been around when some of those cases were resolved, I

20  certainly cannot dispute that contention.

21       But Mr. Zhao references other individual defendants who

22  received probation for BSA violations.  And he tries to

23  distinguish himself from those who received sentences of

24  incarceration, by focusing on crimes he didn't commit, and on

25  the fact that he is a first-time offender.

1          But focusing on this crime, Mr. Zhao's BSA offense, it is

2     clear that the scale of his crime is orders of magnitude

3     greater than those of other defendants.

4          Taking into -- taking the *Randol* case, for example.

5     Public information indicates that he pleaded guilty to one

6     count of failing to have an effective AML program.  He

7     admitted to engaging in three transactions totaling $273,940

8     in Bitcoin, without obtaining customer identification

9     information.  And he admitted that his business allowed

10    illicit actors to launder millions of dollars.  His guideline

11    range was in the 6- to 12-month range.

12         In *G&A*, a case I was involved with, the company, its owner

13    and AML manager, pled guilty to BSA violations, that resulted

14    in $8 million in laundering transactions, G&A paid a fine of

15    $962,932.  And G&A, and its owner, forfeited $240,733.

16         In *Ali,* the defendant pled guilty to fraudulently

17    obtaining and cashing $16 million in U.S. Treasury checks.

18    These offenses pale in comparison with Mr. Zhao's offense.

19    Based solely on the statements of fact, his BSA violation led

20    to the movement of hundreds of millions of dollars in illicit

21    funds, and around a billion in transactions, that violated

22    the U.S. sanctions; nearly 900 million of which involved

23    Iran.

24         And that doesn't account for things we didn't catch,

25    because Mr. Zhao and Binance never filed SARs with law

1    enforcement.

2        And as we note in our submission, this is where the

3    guidelines fail us.  Based on the sentencing guidelines, one

4    can cause laundering transactions in the thousands, hundreds

5    of thousands, millions, hundreds of millions, or many

6    hundreds of millions.  You could make thousands of dollars,

7    hundreds of thousands of dollars, millions of dollars, or in

8    Mr. Zhao's case, billions of dollars, facilitated by unlawful

9    conduct, and have similar very low guidelines.

10       The only reason any of these defendants and Mr. Zhao can

11   be said to be similarly situated, is that the guidelines for

12   this offense are flawed.  Sentencing Mr. Zhao to probation,

13   is not treating similar defendants similarly.  It is allowing

14   Mr. Zhao to profit unjustly for criminal conduct, on an

15   enormous scale.

16       Such a sentence would not reflect the seriousness of the

17   offense, it would not provide just punishment, and it would

18   not promote respect for the law.

19       If Mr. Zhao does not face incarceration, after

20   deliberately and willfully planning to violate U.S. law, to

21   build the largest cryptocurrency exchange in the world, and

22   get rich in the process, while facilitating the transmission

23   of at least hundreds of millions in illicit funds, and

24   causing hundreds of millions of dollars in sanctions

25   violations, then no one will face incarceration, and the BSA

1    will be, for all intents and purposes, a dead letter.

2        The BSA places financial institutions at the forefront of

3    the protection of our financial system.  Financial sanctions

4    imposed under IEEPA are designed to deprive rogue states of

5    the tools they desire, and they play a crucial role in

6    protecting our national security.  By not having an effective

7    AML program, Mr. Zhao caused massive damage to both tools, on

8    an order of magnitude far beyond an individual defendant.

9    And his sentence should reflect that.

10       My last theme relates to specific and general deterrence.

11   As we note in our memorandum, the recommended guideline

12   sentence is not -- and as I just said, the recommended

13   guideline sentence is not sufficient to afford adequate

14   deterrence to criminal conduct as to Mr. Zhao, and

15   importantly, to the public at large.

16       But to be clear here, the court should impose the

17   sentence -- a sentence of incarceration here, because of the

18   brazenness and magnitude of Mr. Zhao's conduct, and not just

19   to send a message to the crypto industry, or anybody else.

20       As I noted before, the court should not allow Mr. Zhao to

21   benefit from his plan.  But I will point out, briefly, that

22   it is important that any sentence in this case, short of

23   incarceration, would establish some perverse incentives.

24       If you take a step back, an outcome where a defendant

25   makes a plan to violate U.S. law, does so on a massive scale,

 1  makes extraordinary amounts of money doing so, gets caught,

 2  puts their hands up and says:  I'm sorry, and admittedly have

 3  to part with a significant amount of money, but then get to

 4  go home to continue to make money, a rational actor, like

 5  Mr. Zhao appears to be, might look at this and take that

 6  chance.  The only lesson here is that you'd have to go as

 7  large as possible in order to make the chance worth it.

 8      And the *BitMEX* case is instructive here.  Those defendants

 9  got sentenced in 2022, just before Mr. Zhao pled guilty here.

10  In that case, the BitMEX executives similarly planned to

11  avail themselves of the U.S. market, without complying with

12  U.S. law.  They got indicted and pled guilty.  They made

13  millions of dollars, by breaking the law, and none of them

14  were incarcerated.  They, too, decided to ask for

15  forgiveness, not permission, and it largely worked out for

16  them.

17      Following on that, Mr. Zhao and Binance arrived to take

18  that strategy to a whole new level.  Lots more money made,

19  and lots more damage to the U.S. financial system and

20  national security interests.  Mr. Zhao should be incarcerated

21  because of the severity of his crimes.  But a sentence of

22  incarceration would also break the chain of perverse

23  incentives, and provide for specific and general deterrence.

24      Briefly, I'd like to address some of the arguments that

25  Mr. Zhao raises in his -- other arguments he raises in his

1    sentencing memorandum.  Again, the sentencing recommendation

2    here is based on Mr. Zhao's offense and related conduct, not

3    on crimes having nothing to do with this case.  We are not

4    suggesting that Mr. Zhao is Sam Bankman-Fried, or that he is

5    a monster.  And we're not trying to kill the cryptocurrency

6    industry.  We're simply seeking a sentence that adequately

7    addresses the magnitude of the offense.

8        As to Mr. Zhao's efforts to build a compliance program,

9    we've covered that pretty much already.  He understood what

10   the regulatory environment was, and he knew enough to violate

11   the law.  His efforts to block U.S. users happened, because

12   he was afraid of getting caught.  And his well-documented

13   attempts to deceive regulators are well known.

14       As to the personal -- Mr. Zhao's personal characteristics.

15   Again, this is not about Mr. Zhao, as a person.  For us, it

16   is about his offense conduct and the sentence that it merits.

17   But that said, many otherwise good people have been sentenced

18   to terms of incarceration.  And they've been sentenced to

19   incarceration in times where they engaged in momentary lapses

20   in judgment, and not in willful, deliberate conduct like

21   occurred here.

22       As to the international licenses and regulatory costs that

23   Binance has incurred, these were obtained against a backdrop

24   of Binance making significant amounts of revenue in the U.S.,

25   a place that was -- a place where Binance.com did not have a

1    license.

2       And the idea that doing something that you were supposed

3    to do, which is get a license to operate in a country, is a

4    mitigating factor, is something that we would reject.

5       Again, Mr. Zhao and Binance did encourage compliance

6    enhancements.  Again, those were done after Binance got

7    caught.  And certainly he has complied and cooperated with

8    law enforcement.  But, again, this is what you're supposed to

9    do.  A company that operates in the United States, avails

10   itself of the U.S. financial system, and makes tremendous

11   amounts of money here, should cooperate with law enforcement.

12   That on occasion, Binance may have gone above and beyond, is

13   commendable, but it does not merit a probationary sentence

14   here.

15       Mr. Zhao did accept responsibility.  And it is commendable

16   to him that he chose to come here from a non-extraditable

17   country.  He definitely deserves credit for that.  But it is

18   worth noting that the alternative was getting charged, and

19   likely having to live life as a fugitive.  Or coming to the

20   U.S. to stand trial, and face the significant amount of

21   evidence against him.

22       His stepping down as the CEO was a natural consequence of

23   his wrongful conduct and it's driven, in part, by a desire to

24   protect the company.  And that company still exists.  He

25   still owns it.  And he still stands to continue profiting

1    handsomely from the operations of that company.

2        The financial penalties Mr. Zhao has, and is paying, are

3    significant.  But given the magnitude of the wrongdoing here,

4    financial penalties just are not enough.  Mr. Zhao should not

5    be allowed to pay his way out of the appropriate punishment

6    here, which is a sentence of incarceration.

7        And even if the court is inclined to take up the

8    government's recommendation on a sentence here, Mr. Zhao is a

9    relatively young person, and will have plenty of time and

10    resource to have the positive impact on society that he

11    desires.

12        As to the citizenship issue, we understand that that is a

13    significant consideration.  But we would point out that we

14    are here because of Mr. Zhao's choices.  He chose to avail

15    himself of the United States financial system.  He chose to

16    make money here.  And he chose to break the law here.  The

17    fact that he is not a citizen of the United States, should

18    not allow him to incur a windfall from his criminal activity.

19        Mr. Zhao argues that losing control of Binance and

20    sustaining reputational damage, are collateral consequences

21    that merit leniency.  They are not.  They are merely, again,

22    consequences of committing a criminal offense.  Many

23    defendants who face incarceration have failed job loss and

24    reputational damage.  That's what happens when you break the

25    law.  And in many of those cases, the affected defendants do

1  not have the resources that Mr. Zhao had.

2      Finally, Mr. Zhao argues that a probationary sentence will

3  incentivize others to follow his example, fully accept

4  responsibility, remediate and cooperate.  To the contrary, a

5  probationary sentence here, in addition to allowing Mr. Zhao

6  to unjustly profit from his wrongdoing, will incentivize

7  others to break the law, and to do it at the largest scale

8  possible.

9      For all of these reasons, Your Honor, the court should

10 sentence Mr. Zhao to 36 months' incarceration.  And, again,

11 if the court is inclined to reject that recommendation, a

12 sentence of incarceration, a meaningful one, is required

13 here, to reflect the seriousness of the offense, to promote

14 respect for the law, and to provide just punishment for the

15 offense, and afford adequate deterrence to criminal conduct.

16 Thank you.

17         THE COURT:  Counsel, I have a couple questions; at

18 least one.

19         MR. MOSLEY:  Yes, Your Honor.

20         THE COURT:  It concerns primarily sentencing

21 disparity.  That's one of the guideline factors this court

22 must consider.  And I've pored through the cases that have

23 been advanced by both parties.  And your recommendation is

24 almost double the top end of the guideline range.  And would

25 that not cause sentencing disparity if the court were to

1   follow the government's recommendation, at that level?

2        MR. MOSLEY:  Well, we don't believe so, Your Honor,

3   largely because of the magnitude of this offense.  An

4   individual defendant has not been responsible for this much

5   movement of illicit funds, that we can think of.  And as a

6   result -- and with the accompanying sanctions violations.  I

7   note that in Mr. Zhao's submission, a lot of his comparison

8   sets were to corporate cases, not to individual cases, in

9   terms of magnitude of the offense.  The fact that an

10   individual was responsible for this is telling here, and is

11   significant.

12      So we don't believe that it would be a sentencing

13   disparity.  Certainly the disparity is in the magnitude of

14   the conduct.  And if the court -- again, if the court is

15   inclined to not accept our recommendation on this, we still

16   believe a significant sentence of incarceration is necessary.

17        THE COURT:  All right.

18      Counsel, of all the cases that you've advanced to this

19   court, is there a particular case that you believe should be

20   the guide or directive for this court to follow, as a basis

21   to conclude this is a fair and just sentence?

22        MR. MOSLEY:  I think that this is just -- to some

23   extent, this is a unique case.  And so I don't know that

24   there are a ton of cases that I would point to -- I mean, a

25   lot of these other cases, like I said earlier, involve

1   individuals moving small amounts of money here and there.

2   And some of those folks went to jail.  In this case, we had

3   someone who deliberately violated U.S. law, moved a lot of

4   money, did so in a way that was designed specifically to

5   avoid being caught by U.S. authorities; and created a new

6   plan, when that plan was about to fail.

7        So I think that this is somewhat of an outlier case, and

8   as such, deserves to be treated that way.

9            THE COURT:  And the last question, counsel.  As you

10  know, the beginning point under the guideline consideration

11  is history and characteristics.  And I've gone through the

12  volume of letters submitted to this court, and they

13  articulate extraordinary commitments and dedication to

14  philanthropic opportunities across the planet, not just in

15  his country, but across the planet.

16       And how did that factor play into the recommendation that

17  you have, that's more than twice the guidelines, which is

18  essentially an exceptional sentence?  And was there any

19  weight given to that in your analysis?

20           MR. MOSLEY:  There was, Your Honor.  We did take into

21  account, and thoroughly reviewed the letters that were

22  submitted on Mr. Zhao's behalf.  I think lots of really good

23  people do bad things and violate the law.  The sentence that

24  we are asking for, even if Your Honor was to impose it, is

25  significant, as it relates to the BSA, for sure.  But is not

1  necessarily as significant -- and I don't want to downplay

2  any jail time; jail time is significant no matter what it is.

3  But if he served that sentence, he would have plenty of

4  resources.  Again, he still owns Binance.  Binance is still

5  making money.  He has a lot of money now.  He still would be

6  able to do all of those wonderful things that he plans to do,

7  after serving the sentence.

8       I think what's relevant for us here, is that the sentence

9  needs to reflect the seriousness of the offense, and

10  notwithstanding the good works that Mr. Zhao has been doing,

11  plans to do, or will do in the future.

12       THE COURT:  Thank you, counsel.  That concludes all

13  the questions I have of you.

14       All right.  I'll hear from probation.

15       PROBATION OFFICER WHALEY:  Thank you, Your Honor.

16  Our recommendation is five months of custody, followed by no

17  supervision.  Our written recommendation outlines our

18  justification for this recommendation, and I won't repeat

19  that here.

20       But I will just note that a custodial sentence of five

21  months provides a meaningful and punitive sanction here, that

22  we believe is significant enough to deter the defendant, and

23  others, without being unnecessarily harsh.

24       A sentence that follows this recommendation would be one

25  of the longest sentences for similar conduct imposed in this

 1   country.  Taking into account the unprecedented scope of the

 2   offense here, while balancing what we maintain is an

 3   extraordinary acceptance of responsibility, the defendant's

 4   compelling personal history, and the post-offense steps taken

 5   by the company.

 6       If Your Honor is interested in imposing a noncustodial

 7   sentence, we would recommend home detention, in the United

 8   States, given the impossibility of oversight by this court,

 9   if probation is imposed abroad.

10       Your Honor, I'm also interested in discussing the

11   government's recommendation for remand.  And I'm not sure if

12   now is the appropriate time, or if you are interested in

13   hearing about that.

14           THE COURT:  We'll take that up, if that's a

15   determination of the court.  That completes your

16   recommendation?

17           PROBATION OFFICER WHALEY:  Yes, Your Honor.

18           THE COURT:  Thank you.

19       Counsel for the defense?

20       MR. BARTLETT:  Thank you, Your Honor.

21       As you know, we are here today for sentencing of Mr. Zhao

22   on the single count he has pled guilty to, that is, failure

23   to maintain an effective money-laundering program at the

24   company that he founded and ran for many years, Binance

25   Holdings Limited.

1        And I know that's very obvious.  But I say that because

2    when I hear the government discuss the crime here, they don't

3    seem to be talking about the actual crime.  The crime that he

4    pleaded guilty to was not having an effective money

5    laundering program.  They talk about a number of other things

6    that they may think is relevant.  That is not why we are here

7    for sentencing today, and that is not what Mr. Zhao pled

8    guilty to.

9        On a personal level, I just want to say what a joy it is

10   to be in front of the court.  It's been many years since I've

11   been here.  And it has been really a great experience to be

12   back in front of the court.  I want to thank probation -- as

13   you mentioned, I don't think there's another sentencing

14   report that I've seen like that, in this district, let alone

15   I think anywhere in the United States.  The amount of work

16   that they clearly put into that report is remarkable, and is

17   an indication of the type of assistance that this probation

18   department has provided the court for years.

19       And I want to apologize to the court, because we have

20   imposed on you unmercifully.  We have had so many letters

21   that came in that you had to go through.  And I know Mr. Zhao

22   asked me, he said, "Do you think he'll read all those

23   letters?"  And I said, "I guarantee you, he will read every

24   single letter that comes before him."  Long sentencing

25   memorandums, a lot of things under seal, exhibits, a lot of

1    time for the court.  And I know you have a full docket.  And
2    we really appreciate all the work that you, and your staff,
3    Victoria, and everyone else did on this case.

4        Before I get to my statement, I just want to take two
5    seconds to introduce a few people who are here today, who
6    traveled to Seattle to show their support for Mr. Zhao.  And
7    I'm not going to go through all of them, but I definitely
8    want to bring to the court's attention that his mother
9    Mrs. Zhao is here, that his sister Jessica is here, with her
10   son.  And also that Mr. Zhao's son, Ryan, is also here.

11       And I know you've read all the letters.  But I reread
12   Ryan's letter over the weekend.  And I was struck by the
13   eloquence of what he wrote to the court.  I'm just going to
14   quote one line from it.  "The brushstroke of this situation,
15   while profound, does not define the canvas of the character.
16   I hope the scales of justice weigh not only the selective
17   actions, but also the essence of a loving father, who has
18   lived a life defined by values, morals and resilience."  That
19   is really eloquent.  I wish I wrote like that.  And I just
20   wanted to make sure the court had a chance to consider it.

21       And finally, Mr. Zhao, and all of us, are very grateful
22   for the many people that wrote letters of support for him.
23   Senator Baucus wrote an incredibly eloquent letter to the
24   court.  A number of government officials from the UAE.  And a
25   number of persons that knew him personally, knew the company,

1   and supported him, are quite striking.

2       I'm going to keep my remarks short.  Mr. Burck is going to

3   handle the majority of our arguments.

4       There are two things I want to focus on.  They're not

5   really things I'm going to focus on, because I was so

6   impressed with the probation officers' report.  I want to

7   talk about two things they said.  At paragraph 55 of the

8   presentence report, the probation notes, and I'm going to

9   quote, "Defendant has shown a remarkable acceptance of

10  responsibility."  Clearly, he's going to get the two points

11  for acceptance.  But that isn't what they said.  "He has

12  shown remarkable acceptance of responsibility."  And that is

13  very, very true.

14      First of all, he traveled from the UAE, where he's a

15  citizen, a non-extradition country, to face these charges.

16  And you think he flew in here, really, that's not that big of

17  a deal.  But I was struck, there's actually a case going on

18  in San Francisco right now, Mike Lynch.  He was indicted in

19  November of 2018; a very rich person.  It's a big case

20  involving fraud in the Northern District of California.

21      For four and a half years, Mike Lynch fought extradition

22  from the United Kingdom, which you would think would be a

23  pretty quick ticket, four and a half years he was able to

24  fight that.

25      But Mr. Zhao, had he wanted to spend his resources and his

1   time avoiding facing these criminal charges, he could have.

2   How long he could have lasted, I have no idea.  Ten years,

3   15 years?  I have no idea.  He didn't do that.  He chose to

4   voluntarily come here and face these charges, knowing full

5   well what he might be facing.  He deserves credit for that.

6   And the probation department recognizes that.

7        He reached a plea agreement with the government, before he

8   even landed here.  He directed his company, Binance, to also

9   resolve their problems with the government.  And as was made

10  clear, it hasn't been discussed yet, it wasn't just that

11  Mr. Zhao and his company that he directed resolve the

12  problems they had with the Department of Justice, they also

13  resolved three other major investigations.  The Office of

14  Foreign Asset Control, the Financial Crimes Enforcement

15  Network, and the Commodity Futures Trading Commission.  All

16  three of those were resolved.  And they weren't resolved

17  quickly and easily, and I might add, cheaply.  Jointly they

18  paid the United States Government over $4.3 billion.

19       Should you be able to buy your way out of your problems?

20  No, of course not.  But is that an indication of acceptance

21  of responsibility?  Absolutely.

22       He never minimized his conduct.  As you read the letters

23  of support, you saw how many times Mr. Zhao had talked to

24  people honestly, admitted his mistake, and asked them for

25  their support.

1      Literally -- I sat down and I thought about it over the

2   weekend, I thought to myself, if someone was going to accept

3   responsibility, is there anything else they could have done,

4   to show the court how remorseful they are?  And honestly I

5   couldn't come up with another factor.

6      There's one additional paragraph I want to bring to the

7   court's attention, also from the probation officer's report.

8   This is one of their very last paragraphs, paragraph 156.

9   "In contemplating a sentence outside of the advisory

10   guideline system, the court may wish to consider," and then

11   they listed six factors that they believe the court might

12   consider relevant, in looking at whether a variance from the

13   sentencing guideline range was applicable.

14      And here are the six factors that they identified.  This

15   is from the probation office report.  First, as we just

16   discussed, Mr. Zhao's exceptional acceptance of

17   responsibility is a factor for the court to consider, in

18   weighing whether a variance is appropriate.

19      Second, Mr. Zhao and his company's assistance to law

20   enforcement, which was well documented.  And, in fact,

21   admitted by the Department of Justice personnel.  The time

22   that Mr. Zhao has been forced to spend away from his family,

23   it's been going only six months that he's been away.  As you

24   know from some of the hearings that we've had, he has a very

25   young child, he has two other young children.  He has been

1  out of contact with them.  He's out of contact with his

2  partner.  He's had no visits with them at all.  He's really

3  been here by himself.

4      And that was at the request of the United States.  It

5  wasn't something he chose to do.  The United States said:  As

6  part of this plea bargain, this is what we are demanding that

7  you do.  We made him available, and they insisted he remain

8  available in the United States.

9      His lack of criminal history.  That seems to be almost a

10  given, accepted here.  But as the court knows, oftentimes

11  that isn't a given.  And it's more than just he has no

12  criminal history.  There's not a hint of any wrongdoing in

13  his past.  And there was an amendment to the guidelines last

14  year, the zero-offender adjustment.  And I am not in any way

15  implying the zero-offender adjustment applies in this case,

16  because it doesn't.  One of the factors comes into play, it's

17  not applicable.

18      But the underlying theory that generated this adjustment,

19  is applicable.  And I'll read from the Sentencing Commission

20  new application notes.  If a defendant received an adjustment

21  under 4C1.1, the zero-offender adjustment, and the

22  defendant's applicable guideline range is Zone A or Zone B of

23  the sentencing table, a sentence other than a sentence of

24  imprisonment is generally appropriate.

25      Why do I bring that to the court's attention?  Because I

1   really do think it kind of codifies a change that is coming

2   about in the United States, with regard to the prior view

3   that the only real sentence that counts is one of

4   imprisonment, and that really everybody should go to jail.

5   The mass-incarceration view that really ran the criminal

6   justice system, both in state and federal, for many years,

7   trying a more reasoned, a more nuanced view of what is

8   appropriate.

9          THE COURT:  Counsel, wasn't the mass-incarceration

10   approach designed specifically to address the

11   disproportionate sentencing for African-Americans, as it

12   relates to drug offenses and convictions for crack cocaine?

13   I think there are a number of books written on the same exact

14   topic, counsel.

15          MR. BARTLETT:  I agree with that, Your Honor.

16     I think that the step-away that you're seeing, in a

17   variety of issues across this over the last, I would say, six

18   to eight years, is addressing many factors.

19     An area that we were first impacted with, with regard to

20   mandatory sentencing guideline ranges, where courts didn't

21   even have -- that was a period of time, and then we go

22   forward.  But I do think that a person that has never had any

23   problems with the law, I think the court has to look at, is

24   this really a person we should be putting in jail?

25          THE COURT:  One least question, counsel.

1        Is there anything that you can suggest that the mass

2   incarceration, that you're suggesting to the court, has

3   expanded to cover white collar criminal activity?

4        MR. BARTLETT:  I don't --

5        THE COURT:  I don't know that generally speaking,

6   people charged with white collar criminal offenses, generate

7   large or lengthy terms of incarceration or imprisonment.

8   Wouldn't you agree?

9        MR. BARTLETT:  I appreciate that and I agree with the

10  court 100 percent.

11       THE COURT:  Sir, you're in a courtroom.  You need to

12  take your hat off.

13       Please continue.

14       MR. BARTLETT:  The fifth factor that the probation

15  department recognized, with the collateral consequences that

16  flowed, and the court has already mentioned, simply because

17  he is not a U.S. citizen, if he were to go into jail, he is

18  not treated as the wide majority of people that go into

19  prisons are.  And I want to emphasize this 100 percent.

20  We're not asking for him to be treated as some kind of

21  special, because he's a high profile person, he's wealthy.

22  Not at all.  We just don't want him to be treated worse,

23  simply because he's not a U.S. citizen.

24       Finally, they mentioned in their report that there are

25  collateral consequences because he stepped down as Binance's

1   CEO.  And clearly that was a position that he viewed he would

2   spend his life building that company and maintaining it; and

3   that no longer exists.

4       And finally, there is a seventh factor that I'm not going

5   to mention.

6         THE COURT:  Before you move there, counsel.  Counsel

7   for the government made a specific point, I believe a couple

8   times, about the fact that although your client has stepped

9   down, he still would benefit, profit-wise, from the continued

10   operations of Binance, as that company has not gone out of

11   business, correct?

12         MR. BARTLETT:  He still is clearly a major holder of

13   Binance, no question about that.  He just has no control over

14   the say in the company.

15         THE COURT:  All right.

16       Please continue.

17         MR. BARTLETT:  There is a seventh factor that has not

18   been mentioned in the probation officer's report, but I know

19   the court is very aware of, a factor I'm not going to discuss

20   here.  But I would argue is perhaps one of the most

21   compelling factors that the court should consider.

22       And I want to mention that those six factors identified as

23   a possible consideration for the court to consider, by

24   probation, all point to a downward variance.  All of the

25   factors that they identified, and recognized, and actually

1  documented in their report, support a downward variance.

2     None of the factors support an upward variance.  In fact,

3  they didn't identify any factor that supported an upward

4  variance.

5          THE COURT:  Counsel, on that point, probation still

6  recommends a period of incarceration, even though they are

7  including or have reflected different considerations for a

8  downward variance.  Would you agree?

9          MR. BARTLETT:  I agree 100 percent.

10          THE COURT:  Please continue.

11          MR. BARTLETT:  I would point out, as I read the

12  probation report, I think they recommend a five-month period

13  of incarceration.  And then they list out six factors that

14  you may want to consider, for a downward variance.

15          THE COURT:  To get to the five months of

16  imprisonment.

17          MR. BARTLETT:  Beneath the five months.

18     I'm talking too long, and I know Mr. Burck here has to go.

19  I do want to take two seconds to just make some personal

20  observations.

21     I have got to know Mr. Zhao, I would think pretty well

22  over the last year.  And I will say, unequivocally, he is one

23  of the most impressive and interesting people I've ever met

24  in my life.  And I don't say that lightly.  When you look --

25  when you read the presentence report, and you listen to his

1    background, it's like out of a Steven Spielberg movie.  You

2    feel like:  Oh, this can't all be true.  He grows up in

3    China, dirt poor.  His father, basically, is out of their

4    life, not because he chooses to be, but because he's going to

5    school, first outside of the city that they live in.  Then he

6    moves to Vancouver for five years.  He is in Vancouver for

7    five years, out of touch with his family.

8        And when you hear him talk about it, I would expect him to

9    say:  Oh, you know, that was so horrible.  But not at all.

10   He views all of those years as great years.  He loved his

11   parents.  Loved his sister.  He said it was a great honor, in

12   China, to actually have a person in your family that was

13   accepted to college outside of China.  It was a big honor to

14   have my dad over here going to school.

15       They come to Canada.  You know, they're dirt poor.  He

16   describes his bedroom, he could barely get the bed into his

17   bedroom.  They had to basically hit both sides of the wall.

18   He had to crawl in at the end, and crawl out.  Very crummy,

19   menial jobs.  He worked at McDonald's.  You know, his sister

20   always said, during these years, I always thought he was

21   going to be a volleyball coach.  Why?  Because he was the

22   captain of the high school volleyball team.  He coached the

23   girls high school volleyball team.  He refereed volleyball.

24   She really thought that was the way he was going to go.

25       But he doesn't.  He's super smart.  Very, very talented.

1   Gifted, with regard to computers.  He gets hired, gets

2   recruited.  He builds himself up.  And eventually he starts

3   Binance in 2017.  And he invests all of his money in there.

4   He takes a risk that 99.9 percent of the people in the world

5   would never do.  And he makes it an incredibly good company

6   almost immediately.

7       And one of the factors that doesn't get enough play, in my

8   view -- so he establishes Binance in July of 2017, and almost

9   immediately, there is a devastating event that occurs, which

10  is China says:  We're not going to allow crypto in the

11  country anymore.  This is the fall of 2017.  And virtually

12  everybody in China is going to lose all of their money.  He

13  doesn't allow that to happen.  He makes whole his Chinese

14  customers.  And that gets recognized.  And if you look at why

15  is Binance so quickly a huge going machine, it's because he

16  treated his customers with such respect, and protected them.

17      Did he make mistakes?  Absolutely.  That's why we're here.

18  Did he get into crypto because he wanted to make a gazillion

19  dollars?  No.  He got into crypto, because I think he wanted

20  to change the world.  He believes in this.  He wanted to

21  provide a finance system that would support people in Kenya,

22  as well as New York.

23      Did he make mistakes?  Absolutely.  Absolutely.  Was some

24  of it motivated by finances?  Absolutely on that, also; but

25  not all of it.  I've never -- I've honestly never heard him

1  talk about money.  He wanted to make a difference in the

2  world.

3      And what I find so great -- and I will wrap it up here --

4  he still wants to make a difference in the world.  I have no

5  doubt in my mind that his educational pursuit to provide

6  education to people all across the globe, is going to be a

7  huge success, and that he will do it.  And he will make that

8  happen.

9      What we're asking the court is to let him have that chance

10  to fulfill those dreams.

11      And I'm going to let Mr. Burck take over.

12          THE COURT:  Thank you, counsel.

13      Counsel.

14          MR. BURCK:  Thank you, Your Honor.  William Burck for

15  Mr. Zhao.

16      As my colleague, Mr. Bartlett said, we, as the court has

17  also mentioned, we were extremely impressed by the incredible

18  work that probation did.  We don't necessarily agree with the

19  final outcome of five months that they recommended.  But the

20  amount of attention to detail, attention to the facts,

21  attention to the law that they have shown, has been

22  incredibly impressive.  So we thank probation for their work.

23  And, of course, we thank the court for its time and diligence

24  with this case.

25      In contrast, Your Honor, we have very closely reviewed, of

1 course, the government's submission in this case.  And as the

2 court noted, the government is seeking double the top end of

3 the range, under the guidelines.  Actually, it's more than

4 double, given the court's ruling this morning, that the

5 two-level enhancement does not apply.

6  Your Honor, when we read the government's submission, and

7 I say this as a member of the defense bar, it read to us like

8 the kind of submission that a desperate defendant would

9 write.  Because the defendant, in those desperate cases,

10 says:  Ignore the guidelines.  Ignore the law.  Ignore the

11 facts.  The guidelines are wrong.

12  And today we heard an extraordinary statement from the

13 government, that the guidelines are wrong; they're flawed.

14  The government simply, and to their credit, openly, says

15 that the Sentencing Commission, that the Congress, that the

16 prior courts, in every case that have dealt with a similar

17 situation, are all wrong.

18  And the government believes that its policy view, its view

19 that the BSA has not been taken seriously enough by the

20 Congress, that passed the statute, by the Sentencing

21 Commission, you know, judges and other esteemed members of

22 the bar, to review exactly what Congress intended, exactly

23 what would be fair, what the law requires; that they're all

24 wrong.  And that the judges who have decided all of these

25 cases, are all, every one of them, wrong.

1      And the government wants this court to adopt their policy

2  position, contrary to all of the cases, to the Sentencing

3  Commission, to the Congress, and impose an extraordinarily

4  punitive and completely unfair sentence on Mr. Zhao.

5      And, Your Honor, you asked a question which I think

6  Mr. Mosley said he could not answer, because this was such a

7  unique case.  You asked the question, what is a case that

8  this court should be linking itself to, linking its thinking

9  to, in terms of imposing a fair sentence.

10      Your Honor, we can point to, and we have in our brief, to

11  a dozen cases -- more, in which there is not a single case,

12  in which a person convicted of a BSA offense, this BSA

13  offense, failing to maintain an effective AML program, with a

14  criminal history of one, where there's no fraud alleged,

15  there's no other crimes alleged; who has been sentenced to

16  prison.  Not a single one.

17      And the most useful case, in our view, is the *U.S. v.*

18  *Hayes* case.  That is the BitMEX case.  That's the case that

19  Mr. Mosley acknowledged that those three defendants, in his

20  words, got a good deal, because the court said, "I'm going to

21  give them probation."  So they got a good deal from the

22  court, according to Mr. Mosley.

23      Your Honor, I'd like to spend a little time on that case,

24  and I know it's in our memorandum, but I think it's important

25  to spend some time in that case, to understand why that case

1    is a very relevant and useful precedent for imposing a

2    sentence on Mr. Zhao.

3        And before I do that, I just want to mention that, again,

4    probation did a remarkable job with the PSR.  But there were

5    a few factors they didn't really consider, when they came to

6    their five-month recommendation.  One of those, we would

7    submit, is they didn't fully consider the

8    sentencing-disparity issue, which the court has already noted

9    is an important issue.

10       They also didn't consider, as much as we think they should

11   have, the effect of Mr. Zhao being incarcerated in the United

12   States, as a non-citizen.  And I'll touch on that in a bit.

13   And they also did not really consider the matters that are

14   under seal before the court.

15       You but starting with the sentencing-disparity issue and

16   the BitMEX case, the *U.S. v. Hayes* case.  In that case there

17   were three defendants, the CEO, COO, CTO, this is the chief

18   technology officer, who were all indicted and fought for

19   17 months before -- in pre-litigation, before trial, against

20   a BSA charge.  Same BSA charge in this case.

21       And in that case the government described the BitMEX

22   platform as, in effect, a money-laundering platform.  There's

23   no such allegation in this case that Binance was, in effect,

24   a money-laundering platform.

25       Were there problems on it?  Were there crimes that may

1    have been committed?  And, certainly, was the crime of not

2    having an AML program committed?  Yes.  But never did the

3    government allege, and there are no facts to support that

4    Binance was a money-laundering platform.

5        That case also, according to the government's own press

6    release for that case, said that the CEO and the COO had

7    personally communicated, directly, with people located in

8    sanctioned countries, particularly in Iran.  Directly with

9    those people.  Knew exactly who they were dealing with.  Knew

10   exactly what they were doing.

11       There is no such allegation here against Mr. Zhao.  There

12   is no evidence that he was speaking to Iranians, or speaking

13   to anyone else from sanctioned countries.  And also the

14   government in that case, in their press release, described it

15   as a money-laundering platform that laundered billions of

16   dollars of transactions.

17       Now, the government wants the court to say:  Well, BitMEX

18   is not as bad, because Binance is a lot bigger.  The scale

19   was a lot bigger, just a much, much larger company, and

20   therefore, the court should hold Mr. Zhao personally

21   responsible, because he had a bigger, more successful

22   platform.  Which was not a money-laundering platform, by any

23   evidence, or even by the allegation of the government.

24       And also, even by their own assessment, the amount of

25   transactions that involved sanctioned entities, was about

1    .0004 percent of all the transactions, the trillions of

2    transactions that Binance processed.

3        And because of that scale, they want this court to say,

4    Mr. Zhao should go to prison for 36 months.

5        Your Honor, that is also why they have to say that the

6    guidelines, and the Sentencing Commission, and the Congress,

7    and the courts, have all been wrong, have all just missed it.

8    Because the guidelines themselves, do not provide for a

9    single enhancement, a one point, two point, any enhancement

10   for scale.

11       The only enhancement that's in there is for fraud.  So the

12   Sentencing Commission knew that -- when they were drawing up

13   their recommendations, they understood that fraud is

14   something that should lead to an enhancement.  They put it in

15   there.  There is no allegation of fraud in this case, as the

16   court is well aware.

17       There is nothing in the guidelines, in the policy, in the

18   statute, that says anything about scale, that a company,

19   because it's much bigger, and much more successful, and a

20   person who runs that company, should be much more harshly

21   treated, than someone who has a less successful or smaller

22   business.

23           THE COURT:  Counsel, one of the things the government

24   points out, I believe a few times in their recommendation to

25   the court, is that the fact that Binance didn't have any

1  controls, they essentially turned a blind eye to the dark web

2  opportunities for individuals to transact in activities that

3  may have involved terrorism, drug transactions, trafficking,

4  and a host of abuses around the planet.

5      So shouldn't that be a factor in terms of the fact that

6  your client is not accused of specific activity, but by the

7  indifference or the insouciance he engaged in, they simply

8  said:  It just happens, but we're not responsible for those

9  things?

10     Isn't that a factor for the court to consider.

11         MR. BURCK:  Absolutely, Your Honor, it is.  And

12 Mr. Zhao has taken responsibility for what allowed,

13 potentially, those types of issues to occur.  He did not have

14 the right AML program.  He did not have an effective AML

15 program.  That is the offense, that's the exact offense that

16 is what he pled guilty to.  That's what all these other

17 individuals pled guilty to.

18     They plead guilty to the fact that they do not have a

19 program in place that allows potential bad actors, sanction

20 violators, drug dealers, whatever it would be, to operate on

21 their exchange.  That offense is encapsulated, is

22 incorporated, or those factors are encapsulated into the

23 actual crime to which Mr. Zhao has pleaded guilty.

24     So every single person who pleads guilty to an offense

25 like this, including the three people in the BitMEX case,

1    they had exactly the same situation.  In fact, it was worse,

2    according to the facts and according to the government's own

3    press releases, because they were interacting directly with

4    people they knew they couldn't be interacting with.  And they

5    were running, according to the government, a money-laundering

6    platform.

7        So in this case, the fact of having -- exposing the U.S.

8    financial system to those risks, those are already

9    incorporated.  And that is part of the crime that Congress

10   has passed, and that the Sentencing Commission has examined.

11   That is the actual crime.

12       And this is not to minimize it in any way, because

13   Mr. Zhao has taken full responsibility for it.  But that is

14   how the factor is already taken into account.

15       And that's why we believe that there has never been -- and

16   we've looked across the landscape, for every single, any case

17   that could possibly have had incarceration with someone like

18   Mr. Zhao, again, with no criminal history, no fraud, no other

19   crimes committed.  And we have found not a single judge who

20   has ever put that person in prison.

21       And we think part of the reason for that is because, to

22   the court's question, the judges in those cases understood

23   that the crime they've committed does expose the U.S.

24   financial system, just the way the court has laid it out.

25   But that's the crime.

 1       Then the question is, what are the factors that will lead

 2   to the sentence, beyond the base level.  In these cases, all

 3   of these cases, the courts look at the record, and they

 4   determine that incarceration is not appropriate.  Even when,

 5   in BitMEX, they were running a money-laundering platform.

 6   That was what the government said they were doing.  They

 7   didn't even seem to have any other legitimate purpose.

 8       THE COURT:  Counsel, in your assessment of what other

 9   judges were doing or considering, would it be perhaps that

10   incarceration wasn't a consideration, because of the size of

11   operation?  And I think everyone is on the same page, in

12   agreement, that there is no other case, that this is

13   unprecedented in terms of the volume, scale, and massiveness

14   of the dollar impact from noncompliance with the regulations

15   of the United States Government.

16       MR. BURCK:  Your Honor, respectfully, I don't believe

17   that is a factor that was considered.  Although BitMEX was

18   much smaller than Binance, BitMEX was a very large operation,

19   in terms of the actual offenses that occurred.  It was not as

20   large as Binance, but in terms of the proportion of illicit

21   activity that was actually going on on that platform, it was

22   much larger than Binance.

23       But also, Your Honor, there are cases -- not BSA cases,

24   and we reference them in our submission -- there are cases in

25   which -- BNP Paribas, Wells Fargo, JPMorgan, many, many very

1  large banks have been subjected to deferred prosecutions, or

2  informations and guilty pleas, for much, much larger amounts

3  of actual illicit activity.  In those cases, they dealt with

4  terrorism financing, they dealt with weapons of mass

5  destruction proliferation, things that, again, we don't have

6  any evidence of in this case.

7       And in those cases, Your Honor, not a single person was

8  charged individually.  And all of those cases, BNP Paribas

9  paid $8.9 billion to the United States Government, pursuant

10  to a guilty plea.  Not a single executive was charged,

11  despite the fact that the statement of facts in that case

12  said that the high-level executives and senior bank

13  officials, were well aware of what was going on.  And in that

14  case, the government chose not to charge anyone.

15       In all the cases we mentioned, the *Danske* case, $2 billion

16  was paid by *Danske*, for not having an effective AML program.

17  Again, the allegation is that the high-level executives at

18  those banks, at that bank, knew about this.  No one was

19  charged.

20       And in all of those cases that we reference in our

21  submission, in none of those cases were individuals charged.

22       And the reason I mentioned that is because I think it goes

23  back to the fact that scale itself is not something that the

24  BSA was intended, or was meant to punish, independent of the

25  crime itself.  The crime itself is the failure to have a

1   money laundering program, right?  An anti-money laundering

2   program.  That is the crime that Congress has passed and the

3   Sentencing Commission has addressed.

4       The scale of what offenses occur within that particular --

5   that are caused by the failure to have an AML, is not

6   something that Congress or the commission have ever said.

7   And, in fact, clearly by implication they've rejected the

8   idea that just because have you a much bigger business, that

9   therefore you end up with a much harsher sentence.

10      That is just something that has never been done in any of

11  these cases.  And these cases have been going on well over a

12  decade.  And also there have many sentencings recently.

13      And with the bank cases, just as an analogy, we're talking

14  about violations of IEEPA, the Trading With the Enemy Act,

15  acts that deal directly with actual violations of serious

16  terrorism laws, and similar laws.

17      In those cases, we don't have individuals being charged at

18  all.  And the companies pay very large fines to resolve the

19  case.

20      So we think that the broad scope of what has -- what we

21  see in the case law, and the way the Sentencing Commission

22  has dealt with these cases, suggest that -- or strongly show

23  the scale is not the issue.  And it makes sense.  Because,

24  again, if Binance was like BitMEX, a money-laundering

25  platform, then I don't think that Mr. Zhao would be sitting

 1  here today pleading guilty, or having pled guilty, being

 2  sentenced to a BSA violation.

 3      Instead, he have committed massive amounts of money

 4  laundering, he would have committed massive amounts of

 5  terrorist financing, or contributed to it.  This is not that

 6  case.

 7      This is a case in which he has a legitimate business.  And

 8  it's still around, because it is a legitimate business.  Now

 9  it's much more legitimate, because they've taken so many

10  remediation steps, over the course of years, well before --

11  Mr. Mosley said when they were caught.  I'm not sure what he

12  meant by that.

13      They had been doing remediation well before the plea

14  agreement, years before the plea agreement.  They were

15  putting in AML policies well before that.  And, of course,

16  they've taken more steps, since they were under investigation

17  and since the plea.  And they've taken so many steps that

18  they are now the gold standard in the crypto industry, for

19  compliance.

20      THE COURT:  Are you suggesting, counsel, that they

21  took these steps, absent any law enforcement or entity

22  engaged in investigation of Binance or it's financing, or

23  lack thereof?

24      MR. BURCK:  Your Honor, in some ways, yes.  Because

25  there is evidence that when Mr. Zhao found out, and this is

1  referenced in the submissions, found out in 2019 that there

2  were U.S. users on the platform, and that they might be

3  interacting -- because of the algorithm between -- that

4  Binance had to allow for trades, that there might be some

5  risk for actual trading between Iranians, for example, and

6  Americans.  He did say:  We need to try to stop that.  And

7  that's referenced in our sentencing submission.  So there

8  were efforts to do that.

9      Now, of course, Your Honor, the efforts were not

10 sufficient.  And no one -- and Mr. Zhao is not going to say

11 it's sufficient, and none of us is going to say it was

12 sufficient.  And, of course, the investigation, when they

13 learned of the investigation, a couple years later, they

14 started improving their policies and their procedures.

15     They started doing that before the guilty plea, long, long

16 before the guilty plea.  And the efforts they've made have

17 made them truly the gold standard in the crypto industry.

18     And the company, of course, has concluded its issues with

19 the government, and it's operating.  It's operating, not in

20 the United States, other than through -- there's a subsidiary

21 it has here.  But it's operating, and it's functional, and it

22 is successful.

23     That's because it's a legitimate business, which is not

24 the case in all these other cases that we see where the BSA

25 is being used, and where we see the money-laundering

1    platform, a crypto money-laundering platform being addressed

2    in the BitMEX case.

3        Your Honor, so in those cases -- and I do think, as well,

4    the reason BitMEX is important, I mentioned this before, is

5    that these were indicted individuals, who fought for

6    17 months, before they came to agreement.  They had -- I

7    think the CEO had a six to 12-month range.  The COO had a --

8    a range of similar amount.  They each got probation.

9        And the reason for that was because the courts looked at

10   the individual characteristics of the defendants, and decided

11   that in this particular case, we're not going to put them in

12   prison.  And that has been the uniform decision of every

13   single judge in this country who's looked at a person, like

14   Mr. Zhao, with no criminal history, no fraud, no other

15   crimes, who has committed a violation of this particular act.

16       And the government has never pointed to a counterexample,

17   of any sort.  And in their submission, as the court knows,

18   they have no counterexamples.

19       They use the BitMEX case to say:  Well, BitMEX was not as

20   bad as Binance, because of scale.  And I've already addressed

21   the scale issue.  We don't think scale is a relevant factor.

22       Your Honor, just briefly on terms of the cases where there

23   have been people subjected to imprisonment with a BSA

24   violation, there's the *Randol* case, which was a Central

25   District of California, 2024 case.  That was a crypto cash

1    exchange.  And in that case they -- the defendant had made

2    false statements to banks, effectively bank fraud, as part of

3    the transactions that were occurring.  And also had falsely

4    claimed that he was FinCEN registered.

5        He made all kinds of false statements that were included

6    and part of the record.  And in that case, the court decided

7    to give that defendant time in prison.  And that defendant

8    also had a prior conviction for drug-related offenses.  And

9    was also apparently an opioid addict.  So the court decided

10   to put that person in prison.

11       His guidelines range was 6 to 12 months, and he got four

12   months in prison.

13       In the *G&A Check Cashing* case, the manager had prior

14   convictions -- convictions; and was then sentenced to

15   incarceration.

16       In the *Ali* case, there were multiple charges, not just the

17   BSA.  And the defendant pleaded guilty to the AML charge, the

18   BSA charge.  But there were underlying fraud allegations, as

19   well.  And in that case, the defendant got 13 months in

20   prison.

21       Here, there's no fraud.  There's no criminal history.

22   There's no minimization of his role.  There's no lying to

23   federal agents.  There's no lying about registrations.

24   There's no obstruction.  Mr. Mosley suggested, at one point,

25   that Binance had tried to hide what it was doing; and it

1    seemed, by implication, to be from law enforcement.

2        But as the court knows, there is no obstruction allegation

3    in this case.  There's no obstruction evidence in this case.

4    What I believe Mr. Mosley is referring to, were internal

5    documents that Binance had created, back in the 2019

6    timeframe, to conceal the fact, internally, that there were

7    U.S. people.  And the company and Mr. Zhao admitted that.

8        But that's -- I only wanted to correct that, because I

9    didn't want the court to be left with the impression that

10   there was some kind of obstruction element here.  In all

11   these other cases, there's often an obstruction element.  And

12   in this case, the falsification of the internal records was

13   designed -- again, not to excuse it -- to conceal it

14   internally, but it was not being sent out to the government.

15       In fact, that information was provided to the government

16   as part of Binance and Mr. Zhao's cooperation with the

17   government, prior to the plea.  So the reason the government

18   found out about that stuff, was because Binance, under

19   Mr. Zhao's direction, gave it to them.  That's how they found

20   out about it.  That's why there's no obstruction allegation

21   in this case.

22       Your Honor, I would like to turn to -- unless the court

23   has further questions about the sentencing-disparity issue.

24           THE COURT:  Not at this time, counsel.

25           MR. BURCK:  I'd like to turn to -- briefly to the

 1    acceptance of responsibility.  We've heard a lot about that

 2    today.

 3        One thing that the court mentioned during Mr. Mosley's

 4    presentation, that struck me, was the question of:  What

 5    credit are you giving Mr. Zhao for any of these other things

 6    that he's done, any of the things that are positive for him?

 7    Like his acceptance of responsibility, and in the case of the

 8    court mentioned for his good acts, and his characteristics.

 9    And Mr. Mosley said:  Well, we gave it, but he couldn't

10    really articulate it.  It doesn't seem it's possible, given

11    that they want to double, or more, his sentence from the

12    guidelines.

13        But the acceptance of responsibility here is, we think,

14    truly extraordinary, for all the reasons we mentioned, and

15    we're not going to belabor it.  That he came to this country,

16    voluntarily.  That he didn't know if he was going to be

17    incarcerated, at some point when he got here, before he was

18    going to be sentenced.  That he doesn't know if he'll be

19    incarcerated after today.  And.

20        He came here, and he didn't have to.  And he is very

21    wealthy.  And who knows how long he could have been in the

22    UAE, or traveling the world, and evade U.S. arrest.

23        But the reason why we think that's particularly important

24    to consider is that -- and this goes to the deterrence point

25    that the government has made -- that the idea that Mr. Zhao

1    should be used for general-deterrence purposes, to scare

2    everybody else around the world from engaging in AML

3    violations, or engaging in BSA violations, that runs counter

4    to another aspect of deterrence, which is that Mr. Zhao did

5    all these things, he came to the country, he accepted

6    responsibility, he subjected himself to the legal process of

7    the United States, and he did it knowing that there was no

8    guarantees.  But he believed that there would be fairness in

9    the process.  And he has received fairness in the process.

10        And the government's suggestion that, instead, he should

11    be punished for all of these things that he's done.  That he

12    should get much more than anyone has ever gotten for a

13    similar offense, for a similar type of person.

14        That actually acts as deterrence in the opposite

15    direction, in our view.  If there are people out there,

16    around the world, who have done something wrong, a BSA

17    violation, or another violation, and they want to get right

18    with the United States Government, they want to do the right

19    thing, they want to accept responsibility, that if they are

20    going to see a result where Mr. Zhao, having done all these

21    things, and all his characteristics, that he's going to be

22    punished, because the U.S. Government doesn't like the

23    guidelines, in their own words, Your Honor.  They don't like

24    the system that the U.S. has set up.  They want their system

25    to be imposed.

1      What kind of deterrent effect is that going to have on

2  future people who want to do right by the U.S. Government,

3  and by themselves, and accept responsibility?  That deterrent

4  effect, we think, turns against the government.  And it hurts

5  what we believe they're trying to achieve, which is law

6  enforcement.  If people see someone like Mr. Zhao being

7  punished excessively, brutally, and completely, in their own

8  admission, against the recommendation of the guidelines, I

9  would submit that a lot of people are going to decide, you

10  know what, I'd rather stay in my country and take my chances.

11  Which is clearly not what they're trying to achieve.  And

12  that's the opposite of the deterrent effect they should be

13  trying to achieve.

14      Your Honor, on Mr. Zhao's personal history and

15  circumstances, which Mr. Bartlett has gone into in detail,

16  and probation has done a wonderful job of going through in

17  great detail, I would highlight that there are obviously a

18  lot of people who have written for him.  160 letters.  The

19  majority of those, Your Honor, were not solicited.

20      Of course, defense lawyers, when we come to sentencing, we

21  ask our client, you know, we have to -- we would love to get

22  people, your family, friends, colleagues, who would like to

23  say something on your behalf, submitted to the court.

24      In this case, there were a number of those.  But the

25  majority of those were unsolicited.  There were people who

1  know him, who know about his situation, who sent in letters.

2  And there are also tons of letters that are not really

3  letters, but they're on Twitter or X, on social media,

4  supporting him.

5      And it speaks to the kind of person that he is.  And it

6  speaks to the efforts he's made, and the philanthropic

7  endeavors that he has engaged in, for years before this case,

8  and doing now.  The educational efforts, the humanitarian

9  efforts.

10      All these things that he's done, he's done not because

11  he's trying to impress the court so that you can hopefully

12  give him leniency.  He did it because that's who he is.  And

13  that's what you know, from seeing what these people have said

14  about him, and what they continue to say about him.

15  Unsolicited, for the most part.

16      And we think that means something, that someone like him,

17  who is a very well known person, but also can be -- there are

18  a lot of people very well known that are very controversial

19  people.  And of course, he pled guilty to a crime.  Yet all

20  these people say this is a really good person.  This person

21  is doing a lot for people, for his industry, for education.

22  And we think that means something.

23      And, of course, the court will take that into

24  consideration under the 3553(a) factors.  But we think that

25  really bears some emphasis.

1    Your Honor, I'd like to briefly talk a bit about the

2    non-citizen aspect of this, and how that could also affect

3    incarceration.  And this is one of the points that probation

4    did not really focus on, in their recommendation on five

5    months.

6    And on that, it's very simple that because he's a

7    non-citizen, he cannot -- he's ineligible for a minimum

8    security facility.  And he will have to, then, go to a higher

9    level, or more secure facility.  And, again, as Mr. Bartlett

10   said, we're not seeking any kind of special treatment, but we

11   are asking that the court consider his specific

12   characteristics, and his specific situation, in rendering a

13   sentence.

14   Because he is so well known, because it is well known to

15   everyone that he is wealthy, because there is obviously the

16   Binance cooperation that he has ordered, as part of the plea,

17   before he stepped down as CEO, because of the massive record

18   of the cooperation that Binance has engaged in, there is a

19   real risk to him in being in a facility like that.

20   If he was a U.S. person -- and, again, we're not asking

21   for special treatment -- but if he were a U.S. person, he

22   would clearly be eligible for a minimum security facility,

23   because of his characteristics and because it's a non-violent

24   offense, it's not a fraudulent offense.  And here he is not.

25   So we think that should be taken into account.  On top of

 1  all the other issues that we've mentioned, we think that's an

 2  important feature for the court to consider.

 3       Then, finally, Your Honor, just briefly, I've already

 4  mentioned the other factors of deterrence.  We believe that

 5  the government has effectively admitted that they're really

 6  looking for general deterrence here.  Mr. Mosley did say:

 7  No, we're really looking for specific deterrence.  But the

 8  government's submission, as the court has seen, is entirely

 9  about general deterrence.

10       And I'd like to just previously read -- and this is in our

11  submission -- but I think it's just worth hearing in open

12  court, what Judge Koeltl in the Southern District of New York

13  wrote about the concept of general deterrence, or said at a

14  hearing of the BitMEX case, about the concept of general

15  deterrence.  Because the government made the same argument as

16  they made here, today, about BitMEX.  And, again, a situation

17  where that was a money-laundering operation, according to the

18  government.

19       Judge Koeltl wrote:  Any sentence must be just for the

20  individual defendant.  If we impose a sentence on the basis

21  of general deterrence, that wasn't just for the individual

22  defendant, we would end up using the law to impose sentences

23  on individuals that were not just for the individual

24  defendants, and that would be contrary to our law.

25       So you expect that a sentence which is just for the

1    individual defendant, will be sufficient for purposes of

2    general deterrence.  And you ought not to be able to attempt

3    to justify a sentence, based upon the message that it sends

4    to others, unless you could say that the sentence is just for

5    the individual that you're sentencing.

6        Otherwise, you're just treating that defendant in a way

7    that is not just for the individual defendant.

8        And we think that Judge Koeltl really encapsulated the

9    problem with the government's argument, which he heard,

10   himself, two years ago.  The same argument they're making

11   today, which is that this is all about general deterrence.

12   They said they don't like the guidelines.  They said they

13   don't think the BSA is being taken seriously enough.  They

14   said that there should be enhancements added to the BSA, to

15   the sentencing guidelines, based on their preference for

16   higher sentences.

17       They said, Your Honor, they want a disparate outcome here,

18   because they don't like the fact that sentences that have

19   been imposed before are too low; they're probationary.  They

20   want a disparate sentence; that's what they're seeking.  And

21   they're trying to justify that by saying this case is

22   different than all others.

23       Your Honor, the thing that we submit, respectfully, that

24   is different about this case than all those others, is that

25   Mr. Zhao has accepted responsibility, in ways that those

 1    defendants never did.

 2        They went -- they were indicted.  They spent 17 months

 3    fighting the case.  Then they pled.  They were running

 4    money-laundering operations.  They were engaged in all kinds

 5    of direct fraudulent behavior that Mr. Zhao is not involved

 6    in.  They did not build a business that is a legitimate

 7    business, that did have problems, and it did commit a crime,

 8    and has accepted responsibility for that.  They did not come

 9    from the UAE and submit themselves to the U.S. legal process,

10    without being forced to, on their own volition.  They did not

11    do all the things that Mr. Zhao did, long before this case

12    ever existed, to help people, to help people around the

13    world.  They did not do the things that he has done for

14    years.

15        And Mr. Mosley has also suggested that because Mr. Zhao is

16    so wealthy, that he can do all these things, and maybe that

17    shouldn't really -- because he's rich, we really shouldn't

18    treat him -- we should treat him worse, in some ways, than

19    others.

20        But the reality is, this is a person who came from China,

21    from very humble beginnings.  His family fled because of

22    Tiananmen Square.  And he built a business out of nothing.

23    And it did commit a crime, but it's a legitimate business,

24    which is very different than all these other cases.  And we

25    think that all weighs against incarceration in this case.

1    And, again, although probation, we do think they did a

2    wonderful job, and they gave him a tremendous amount of time,

3    and spent a lot of time with Mr. Zhao, and they did a very

4    thorough report, our only disagreement with them is that we

5    believe a downward variance, beyond five months, to

6    probation, is warranted, given the factors that we've

7    discussed today, that are not really taken to full account by

8    them.

9    Particularly, the disparate sentence outcome, looking at

10   the different -- the defendants in each of these cases, and

11   how they compare to Mr. Zhao, and how he's led his life and

12   run his business, as well as the fact he's a non-citizen, as

13   well as, Your Honor, the matters under seal, which we cannot

14   discuss, but we know the court has read thoroughly.

15   So, Your Honor, I'll just close by saying that Mr. Zhao --

16   and you will hear from him, and he's the most important

17   person you'll hear from today.  He will tell you, in his own

18   words, as he has already said in his plea, as he said

19   publicly, after he pled guilty, when he posted on social

20   media.  He knows he did wrong.  He knows that he committed a

21   crime.  He wants to make up for it.  He wants to be sentenced

22   for it.  He wants to take full responsibility for it.  And he

23   will do that again today.

24   But I don't think anybody, even the government, believes

25   that Mr. Zhao, with all the things he's done, and all the

1  things that he's done in this case, really is not accepting

2  responsibility.  And he's accepting responsibility in ways

3  that these other defendants, who got probation, never did.

4  And I think that's an important fact for the court to

5  consider.

6      Your Honor, I was going to ask for a sidebar just on the

7  sealed matter, just to see if the court wanted any argument

8  on that.  But if is court is satisfied on the sealed matter,

9  I won't --

10     THE COURT:  Counsel, as I indicated previously, the

11  court checked the docket as of 5:00 p.m. yesterday.  No one

12  has represented to the contrary.  Every submission to this

13  court was considered and read.  The court does not need to

14  take additional or further argument on those issues, or any

15  other issues before this court.

16     MR. BURCK:  Thank you, Your Honor.

17     THE COURT:  We're going to take a recess at this

18  time.  When we return, I'll hear from Mr. Zhao, and then the

19  court will impose its sentence at that time.

20                    (Recess.)

21     THE COURT:  Good morning, please be seated.  Before

22  we begin, it's come to this court's attention that someone

23  has taken photographs during this court proceeding, and, in

24  fact, has already posted those images on the Internet, or

25  whatever else you use for social media.  That is completely

1    improper.

2         If the court becomes aware of the individuals that take

3    any images, for the balance of this proceeding, and post

4    them, you may be subject to contempt of this court.  Because

5    I'm ordering specifically, in compliance with our rules for

6    this jurisdiction, you're not supposed to take photographs in

7    this court.

8         So I trust that everyone will abide.  If anyone can't

9    abide by that, we have two officers who are present in the

10   court that will assist in that being enforced.

11        So with that, Mr. Zhao, I don't want that to reflect upon

12   the importance of what you have to share with this court this

13   morning.

14        And, sir, this is your opportunity to address the court.

15   You're not required to say anything, if you choose to remain

16   silent.  But it appears you do wish to address the court.

17   And I have read your letter.  But this is your opportunity to

18   share anything you'd like me to know and consider.

19        Mr. Zhao, you have the floor.

20          THE DEFENDANT:  Thank you, Your Honor.  I appreciate

21   the opportunity to address the court directly.  I will be

22   brief.  I failed here.  I deeply regret my failure, and I'm

23   sorry.  Five and a half months ago, I left my family to come

24   to the United States, to take responsibility for my actions.

25        Some people were surprised that I flew in from a

1   non-extradition country.  But those who knew me well, were

2   not surprised.  That's because responsibility is a core value

3   for me; and I live by it.  I believe the first step of taking

4   responsibility is to fully recognize the mistakes.

5       Here I failed to implement an adequate anti-money

6   laundering program, in the company I founded.  I also

7   recognize the seriousness of that mistake, and also recognize

8   the importance of having a robust KYC/AML program.  That is

9   why I directed Binance to fully cooperate with the U.S.

10  Government's investigation, which has been done.

11      Another important part of taking responsibility is to

12  correct the mistakes.  Years before I flew here, before I

13  learned of the investigation, we did start to implement a

14  KYC/AML program.  I also directed Binance to fully remediate,

15  which has been done now.

16      I also directed Binance to resolve with the U.S.

17  Government, which has also been done.  In my mind, I wanted

18  to do everything possible, before stepping down as CEO,

19  including fairly extensive efforts that we undertook to build

20  an industry-leading compliance program.

21      Stepping down as CEO of the company, I found was not easy.

22  It took a while for me to mentally accept that and transition

23  onwards.  Over the last five and a half months, I've had a

24  lot of quiet time alone to think and to reflect.  I fully

25  recognize the seriousness of the mistakes I made.  And, of

1   course, I can assure you there's no way for them to ever

2   happen again.  I've learned an important lesson here, that I

3   will carry with me.  This period also gave me time to think

4   about my past and future.

5       I come from humble beginnings.  I came from a

6   first-generation immigrant family, to Canada.  Both of my

7   parents, while having academic backgrounds before they

8   immigrated, they worked on close to minimum wage jobs in

9   Canada.  They never complained.  Although we were tight on

10  finances, both of my parents worked really hard to give me

11  opportunities.  And because of those opportunities, I've been

12  very -- I've been able to achieve a level of success in my

13  life.  I'm forever grateful for that.

14      For the next chapter of my life, I want to provide

15  opportunities for others, namely our youth.  I'm building a

16  platform to provide high-quality education for

17  underprivileged kids, all around the world, for free.  I

18  believe, with the technologies we have today, it is possible

19  to make online education better and more widely available

20  than what we have today.  I believe this can help millions or

21  hundreds of millions of kids all around the world, giving

22  them opportunities for better jobs, and also life.

23      I started this project already for the last couple of

24  months.  And we're making good progress.  I find this new

25  work extremely rewarding and meaningful.

1          Lastly, I want to thank my family and friends, some of

2     whom are here today.  I want to thank everyone who wrote

3     letters of support for me, most of whom I did not even ask.

4     And all the people on social media, or anywhere in the world,

5     for supporting me, and standing by me in this difficult time.

6          I also want to especially thank the probation office, for

7     taking the time to talk with me and understanding me as a

8     whole person.  They gave me a new level of respect for the

9     U.S. judicial system.  I also want to thank Your Honor, for

10    your time and consideration.

11         Thank you.

12              THE COURT:  Thank you, sir.  You may be seated.

13         Mr. Zhao, this court is mandated to calculate an

14    appropriate guideline range, which I have done, and look at

15    any traditional variances or departures that might be

16    applicable, in view of the circumstances; which the court has

17    done that as well.  I'm also charged with considering all the

18    3553(a) factors in the sentencing guidelines.

19         It's my practice to go through each of those factors, so

20    you have a clear understanding of my thoughts and processes

21    as I went through those factors in determining and arriving

22    at the proper sentence in this case.

23         Sir, first, I begin with your history and characteristics.

24    The reason I asked counsel for the government to weigh in, is

25    to hear from the government in terms of their perspective of

1    how your background, history, and things that you've done,

2    should factor in your sentencing.  And to be honest with you,

3    sir, everything I see about your history and characteristics,

4    are of a mitigating nature and a positive nature, because of

5    what you've done.

6        I note first, that you have no criminal history.  I note

7    that you have lived a law-abiding life, but for the facts and

8    circumstances of this case.

9        The court also notes that you voluntarily agreed to come

10   to the United States, despite the challenges that may have

11   presented themselves with extradition, and fighting the same.

12       The court also finds that you accepted responsibility, by

13   the fact of the large payment that was made to the Commodity

14   Future Trading Commission.

15       The court also does certainly recognize how you were

16   raised, in humble beginnings, but you embraced those humble

17   beginnings to pursue education your and vigorously pursue the

18   development of a company that became Binance.

19       The court also looks to the fact that you took

20   extraordinary steps and significant steps, in terms of your

21   level of cooperation with law enforcement, in their

22   investigation.  These are all factors that I've looked at in

23   your history and characteristics.

24       Next, sir, I look at the nature and circumstances of the

25   offense.  And this is aggravating.  Aggravating to the extent

1  that you were a money transmitter, with registration

2  requirements with the United States Treasury.  You were the

3  CEO of Binance, and you made the strategic decisions, and

4  exercised control of the day-to-day operations in finance.

5  And you were required under the Bank Secrecy Act to implement

6  effective anti-money laundering programs and safeguards; and

7  yet you failed to do so.

8      As a result, it earned significant benefit from the lack

9  of controls and the desire or pursuit of controls, when you

10  knew you should have at the very beginning.

11      Next, the court needs to look at the sentence to reflect

12  the seriousness of what you have done.  Again, the court goes

13  to your failure in your responsibilities to maintain a proper

14  anti-money laundering program, that created potential to have

15  a significant impact upon the community, because of money

16  laundering import, and facilitating other criminal activity.

17  I referenced this before.  That includes drug trafficking,

18  terrorism, and corruption.  And moving proceeds through the

19  dark net, which can impact issues, circumstances, and

20  opportunities beyond our imagination, or an imagination that

21  we even care to visit.

22      Next, the court looks at the need to promote respect for

23  the law and to provide just punishment.  The court believes

24  that from everything I know about this case, that you

25  prioritized Binance's growth and profits, over compliance

1    with United States laws and regulations.

2        Specific reference I make to a September 2019 chat, that's

3    reflected in the documents that were submitted to the court.

4    I believe it's quoted if you -- "If we block U.S. users from

5    day one, Binance will not be as big as we are today."

6    Concluding, it's better to ask for forgiveness than

7    permission, is what you described as a gray area.

8        The court next needs to look at the need to afford

9    adequate deterrence to criminal conduct.  Much ado has been

10   made this morning about how much the court should consider

11   specific deterrence, and general deterrence.  And to be

12   honest with you, sir, I'm quite confident that the concern of

13   needing to protect the public from you completing further

14   crimes is minimal, if it's even in existence.  I'm confident

15   of that, sir, based upon everything that I've read.

16       But in terms of the concept of general deterrence, that's

17   a whole different category that the court needs to address.

18   Specific and general deterrence.  We'll focus on general

19   deterrence.  So others in similar situations or magnitude,

20   clearly understand they must engage in U.S. regulated

21   compliance procedures, that they can't allow customers to

22   create accounts and trade in exchange, without providing

23   identifying information.  That they have to understand that

24   they have to systematically maintain and regulate

25   transactions, to avoid any violation of any laws in the

1    United States.

2        So these are not just casual, general-deterrence

3    considerations; these are very specific.  It has to send a

4    message.  And I know this has been opposed and objected to by

5    your lawyers.  But it has to send a message, that they have

6    to recognize that if they wish to do business in the United

7    States, they must comply with all United States' regulations.

8    And if not, there's consequences.

9        Sir, the court also needs to look at the need to consider

10   whether or not the court needs to provide you with education,

11   training or treatment.  None of those are factors for the

12   court to consider.  You're well educated, you're incredibly

13   bright, and there's obviously no issue regarding any

14   treatment that's an issue before this court, and that's not a

15   factor for the court.

16       The court also looks at sentencing disparity, which is the

17   last factor.  And, again, there's been much dispute about the

18   government's characterization.  This is large.  This is

19   unprecedented.  We haven't faced this volume of activity in

20   the past.  Yet your lawyers want the court to ignore the

21   impact of disparity, because of the consequences, the fact

22   that no other judge -- I believe you know that every judge

23   that's appointed, and every judge that serves, makes their

24   own independent determination.  It's not a question of me

25   looking to what another judge has done.  That doesn't mean

 1   that I don't consider precedent, because I value precedent,

 2   and I value it highly; because it's a fundamental concept of

 3   our system of justice.

 4       But at the same time, the court does not believe that

 5   there's any other case or circumstance that's been before

 6   another judge, certainly not before a federal judge, of the

 7   magnitude, the impact, that your particular case, in fact,

 8   present.

 9       So with all these factors, the court will first confirm,

10   the court will not place you on any period of supervision.

11   The court recognized that fines could be imposed in this

12   matter.  And the court will order a fine in the amount of

13   $50 million.  But that has been satisfied by the amount of

14   money that's already been paid between you and the Binance

15   company.

16       There's a special assessment, which is also due, which is

17   required by statute, in the amount of $100, and that's also

18   due as well.

19       There's no additional restitution being sought by the

20   government.  Is that correct, counsel?

21           MR. MOSLEY:  That is correct, Your Honor.

22           THE COURT:  All right.

23       So, sir, with all these factors, it comes down to the

24   bottom line of what is the court going to do?

25       Now, first of all, Mr. Zhao, I want you to know that I

1   took this book, and I went through every single letter, to

2   the point that the book started separating, because it's

3   important for me to know who you are as a person.

4       It's important for me to have a perspective, not the

5   government's perspective, not probation's perspective, but

6   it's the community of people that you know, that you've

7   interacted with.  And they have given me a complete different

8   picture, in some ways.  And other ways, it's almost a

9   consistent statement of an individual.

10      I can tell you it's rare that I see, and I don't think

11  I've ever seen this volume of letters, with glowing

12  statements, not just from family, but people that have known

13  you for long periods of time.

14      So I want you to know, sir, that that played a big role in

15  the ultimate sentence the court will impose.

16      The letters paint a picture of a man driven, as quoted in

17  one of your letters, was motivated by your passion to

18  technology and a drive to help people.  That's out of one of

19  your letters, sir.

20      It's also clear from the letters, at one point you risked

21  your entire net worth, because of your belief and strength of

22  your conviction to make Binance a success.  And that's a

23  statement to me of a person really committed and driven to

24  what they believe in, and what they want to have occur in

25  their life.

1    It's also clear from the letters that you provided that
2  you're a dedicated family man, and a giving person, as
3  demonstrated by your charitable deeds, for example, the
4  Binance charity, the first Blockbuster that enabled donation
5  programs, and helped 3.5 million people in 62 countries, and
6  a list of philanthropic deeds that continue to go on and on.
7    There's also the charity efforts in Uganda, where the
8  program that you designed and funded, was for children.  And,
9  sir, I could go on and on with the other entities and
10  operations you helped fund, not of recent vintage, but for
11  some period of time.
12    The letters also paint a picture of a man who takes
13  responsibility for his mistakes.  And as the letters said,
14  "He lives simply, and cares for his family and global
15  issues."
16    The background letters reference the fast rise of Binance,
17  under your direction, your hard work and vision is what made
18  it occur.  An operation, with daily operations, and daily
19  transactions, and daily volume of $500 million.  That's
20  extraordinary, sir.  And I think that, again, is
21  unprecedented, when I look at any other case that's before
22  this court.
23    Now, the court acknowledges your staggering
24  accomplishments and that you've demonstrated exceptional
25  acceptance of responsibility.  Probation recognized that, and

1    the court recognizes that as well, because of what you've

2    done.  And this certainly has been factored in the sentence

3    that I will impose.

4        The challenge before this court is how you managed and

5    directed Binance.  As you were building your empire and

6    elected to engage in United States financial dealings, you

7    had a responsibility to comply with United States'

8    regulations.  Not some, but all.  You had the wherewithal,

9    the financial capabilities, and the people power, to make

10   sure that every single regulation in the United States, if

11   you were going to trade at this volume, had to be complied

12   with.  And, sir, you failed at that opportunity.

13       The mere fact that you can place your name next to the

14   largest cryptocurrency operation on the planet, did not give

15   you the discretion to pick and choose which regulations that

16   you chose to follow.  The United States' regulations are not

17   regulations that you can put a do-not-disturb button on your

18   website, or on your operational standards.  It's something

19   that has to be complied with every single day, for every

20   single transaction and operation.

21       The report shows that billions worth of Bitcoins directly

22   transacted to the dark web markets, were often used as, at

23   least argued by the government, by criminals to money

24   launder, large volumes of opportunities to cause harm to

25   victims of terrorism, drugs, and more globally, impact the

 1   financial systems across, not only the United States, but

 2   across the planet.

 3       I was deeply troubled in the materials submitted by the

 4   parties, that include the reference to your statement

 5   reflected on Page 1, in fact the opening line of the

 6   government's brief to this court, is that it was better to

 7   ask for forgiveness than for permission.

 8       Now, I suspect that that was, and I'm confident that was

 9   very prescient of where you are today, asking the court for

10   forgiveness as opposed to the permission that you failed to

11   seek so many years ago.

12       In one letter of support you were characterized as a

13   complex person who made bad decisions.  And the court agrees

14   with that observation.  If I may borrow another support

15   letter, it reads, you have the ability and will rehabilitate

16   because of this tough lesson.  And I'm confident you will do

17   that, sir, if it's the person that everyone else knows that

18   you've represented to this court.

19       In concluding, the court doesn't believe that the

20   government's recommendation of an exceptional sentence is

21   appropriate or warranted, in light of the circumstance.  The

22   government is asking this court to go and essentially double

23   the top end of the guideline range, and began its argument by

24   asking this court to ignore the sentencing guidelines.  The

25   court hasn't heard that before.  And the court is not going

1    to do that, in this particular case, to ignore the

2    guidelines.  They're advisory, and I accept that.  But at the

3    same time, in considering the sentencing guidelines, your

4    conduct does not warrant a 36-month sentence.

5        There needs to be an effort by this court to impose a

6    sentence that is appropriate and reasonable.  And I hope you

7    understand, sir, that when I announce the exact amount of

8    sentence, you have to understand that despite wealth, power,

9    or status, no person, regardless of wealth, is immune from

10   prosecution, or above the laws of the United States.

11       Now, probation made a recommendation of a sentence of five

12   months.  And the reason I'm not going to follow that

13   recommendation of five months is because of the description

14   that was provided in terms of the fact that you were not a

15   U.S. citizen, and the fact that whatever I impose, there will

16   be some delay in your release.

17       But I do believe that a reasonable and just sentence in

18   this case is one of four months.  The court will impose that

19   at this point in time.

20       In this regard, I believe the sentence is reasonable and

21   sufficient, but no more than necessary to carry out the

22   objectives of sentencing.

23       Counsel, for the judgment, before you present the judgment

24   to the defendant, I wish to give him his rights on appeal.

25       Mr. Zhao, I want you to pay close attention.  You can

1    confer with your lawyers in a minute.  But under paragraph 15

2    of the plea agreement, you waived your right to an appeal.

3    And any rights you had on appeal, are exactly as stated in

4    that document.  In addition to those rights, I wish to advise

5    you, you have the right to challenge your lawyers'

6    effectiveness, if you believe that's appropriate.

7         If you wish to appeal the sentence, it's very important

8    that you tell your lawyers that's exactly what you wish to

9    do.  They can explain to you any issues that are appealable

10   and any issues that might survive.

11        If you wish to appeal the sentence and you cannot afford

12   the filing fee for the Court of Appeals, you can ask me to

13   waive that fee, and the court clerk will file the appropriate

14   documents, and file a notice of appeal upon your request.

15        With few exceptions, any notice of appeal must be filed

16   within 14 days of the entry of judgment.

17        And lastly, the waiver does not preclude you from bringing

18   an appropriate motion, pursuant to Title 28, United States

19   Code, Section 2241, to address the conditions of your

20   confinement, or the decisions of the Bureau of Prisons

21   regarding the execution of your sentence.

22        Now, probation raised a question earlier regarding a

23   report date or taking you into custody right now.  I'm not

24   going to exercise that option, sir.  You've demonstrated

25   remarkable compliance with the directives of this court, on

1    the previous release order.

2       I need to hear from your lawyers regarding your

3    recommended report date.  Mr. Bartlett, I'm not sure who

4    wants to speak.

5          MR. BARTLETT:  Your Honor, with all due respect, can

6    we get back to the court on a report date?  We want to have a

7    chance to talk with probation about the alternatives that we

8    have, and perhaps a request for designation also.

9       Perhaps Ms. Whaley can explain what it is that we need to

10   go through at this point.

11         PROBATION OFFICER WHALEY:  I'm not sure exactly what

12   Mr. Bartlett --

13         THE COURT:  First of all, Mr. Bartlett, the sentence

14   I imposed traditionally would be served at the Detention

15   Center.

16         MR. BARTLETT:  As we stand here today, Your Honor, I

17   think that's what we were going to do.  But we do want to

18   talk about it internally, whether or not we want to make a

19   recommendation at Sea-Tac.  And also we want to discuss

20   whether or not -- how long we think the Bureau of Prisons

21   will take for a designation.

22      Our understanding, if he were to report immediately,

23   although I know that's what he wants to do, so he can get

24   back to the UAE, that he might be designated -- that he might

25   be placed in the general population.  But after a

1    designation, he would be placed into a work cadre, which

2    would be a much better situation.  And that's really what

3    we're trying to determine.

4         THE COURT:  Here's the concern, counsel.  I want to

5    make sure your client knows, when he walks out of this

6    courtroom, exactly what his sentence is, and I've given him

7    that, and exactly when his report date is.

8      I don't want that to be something that you talk about with

9    probation.  I'll give you an opportunity to meet and confer

10   right now.  I'll even take a short recess.  But when I come

11   out, I want to be able to articulate, from the bench, exactly

12   what his report date will be, and the designation

13   recommendation.

14     I want Mr. Zhao to understand, I can only recommend, I do

15   not control the Bureau of Prisons.  It's up to them to

16   determine the proper designation.  But I can tell you that,

17   with experience, typically sentences of this duration usually

18   are served at the Sea-Tac Center.

19        MR. BARTLETT:  We've discussed both those

20   alternatives, your recommendation is not controlling, but it

21   is often followed.  And we've else talked about the

22   advantages and probability of a Sea-Tac designation.

23        THE COURT:  All right.  How much time do you need,

24   counsel, to confer with probation?

25        MR. BARTLETT:  Ten minutes.

1    THE COURT:  We'll take a ten minute break.  Call me

2  when you're ready.

3                      (Recess.)

4    THE COURT:  We're back on the record.

5  Counsel, let me hear from you.  I'm not sure who wants to

6  speak for the defense.

7    MR. BARTLETT:  First of all, we apologize in being

8  slow getting back in here.  We have had a chance to talk with

9  probation, also.

10  Our request is that Mr. Zhao be designated, request to be

11  designated to FDC Sea-Tac.  And that we ask the reporting

12  date be left to the discretion of the probation office.  My

13  understanding is they're going to ask for an expedited

14  designation.  And when they get that, they'll notify us and

15  we will report.

16    THE COURT:  Is that correct?

17    PROBATION OFFICER WHALEY:  Yes, Your Honor.

18    THE COURT:  Any input from the government on that?

19    MR. MOSLEY:  No, Your Honor.

20    THE COURT:  Mr. Zhao, you've heard your lawyer make a

21  representation regarding your reporting.  We don't have an

22  exact date.  But do I have your solemn oath and promise that

23  you will appear as directed by the United States Probation

24  Department.

25    THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  That will be acceptable to the court.

2    And that recommendation should be included.

3          MR. LERMAN:  Your Honor, I've prepared the draft

4    judgment and will hand it to the defense for review.

5          THE COURT:  All right.  Thank you.

6      I want to emphasize, again, there should be no photographs

7    taken during the course of this proceeding.  And I don't even

8    want to see a phone up.  So if you have a phone, it needs to

9    go inside your purse, or in your pocket.

10     Probation has obviously inspected, correct?

11         PROBATION OFFICER WHALEY:  We have not seen it yet.

12         THE COURT:  I take it there are no counts to be

13   dismissed, correct?

14         MR. MOSLEY:  No, Your Honor.

15         THE COURT:  I have reviewed the judgment.  It does

16   reflect the court's oral ruling, and I've signed it.

17     Now, I want to address the question of departure from the

18   courtroom.  I'm going to permit defense counsel, and the

19   defendant, and the defense team, to leave the courtroom at

20   this point in time.

21     I'll direct that everyone else that's currently in the

22   courtroom, remain in your seats, until the court directs

23   otherwise.  And I'll remain on the bench.

24         MR. BURCK:  One small matter, for the record.  I

25   misspoke during my presentation about -- I called Binance.US

1    a subsidiary of Binance.  It is not a subsidiary, it's

2    actually a separate company entirely.  I just wanted to state

3    that for the record, Your Honor.

4              THE COURT:  Okay.  That's fine.

5                        (Adjourned.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3

4

5

6        I certify that the foregoing is a correct transcript from

7    the record of proceedings in the above-entitled matter.

8

9

10

11

12    /s/ Debbie Zurn

13    DEBBIE ZURN
     COURT REPORTER
14

15

16

17

18

19

20

21

22

23

24

25